753 N.W.2d 802 (2008)
276 Neb. 275
Robert M. BRENNER and Lisa D. Brenner, Appellants,
v.
BANNER COUNTY BOARD OF EQUALIZATION, Appellee.
No. S-07-810.
Supreme Court of Nebraska.
August 1, 2008.
*807 Robert M. Brenner, of Robert M. Brenner Law Office, Gering, for appellants.
James L. Zimmerman, Banner County Attorney, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
Robert M. Brenner and Lisa D. Brenner appeal from an order of the Tax Equalization and Review Commission (TERC) which affirmed a decision of the Banner County Board of Equalization (Board) denying the Brenners' protest of the 2004 valuation of their residence. We conclude that the TERC decision and order is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. We therefore affirm.

BACKGROUND

BRENNER PROPERTY
The Brenners are the owners of the property in question, which is a single-family residence located in rural Banner County, Nebraska. Construction of the home was completed in late 1998, and the Brenners occupied the home at that time. The cost of construction was between $200,000 and $204,000. The one-story, wood frame home has a brick veneer exterior and a wood shake roof. The main floor area is 2,544 square feet, which includes two bedrooms, 1½ bathrooms, and other living space. There is an attached garage with an area of 1,020 square feet and a slab porch. There is 2,023 square feet of finished space in the basement, including two bedrooms and a bathroom. The county assessor determined the 2004 actual value of the structure alone, based upon replacement cost less depreciation, to be $220,374.

BOARD OF EQUALIZATION PROCEEDINGS
The Brenners filed a protest of the 2004 valuation with the Board. After hearing the testimony of the Brenners, the Board accepted the assessor's 2004 valuation of the Brenner home.

TERC PROCEEDINGS
The Brenners filed an appeal to TERC, challenging the valuation of their property for specific reasons. The Board filed an answer in which it alleged that the valuation was in accordance with applicable Nebraska law and TERC regulations, and was neither arbitrary, capricious, nor unreasonable. Robert, an attorney, represented himself and Lisa in the TERC proceedings.
At the commencement of the appeal hearing on June 13, 2007, the TERC chairman advised counsel that TERC would consider certain materials not included in the record, as permitted by law.[1] Those materials considered and utilized by TERC in this case are reflected in a supplement to the official record. This supplement *808 was filed in this appeal by TERC at the Brenners' request.
TERC received certain exhibits offered by the parties and rejected others. In particular, TERC sustained objections to two documents offered by the Brenners. The TERC chair determined that a report of an audit of the Banner County assessor's office conducted by the Department of Property Assessment and Taxation, covering the period October 2001 through January 2002, was irrelevant. TERC also excluded an exhibit as hearsay, which exhibit was the affidavit of Betty Holliday and an attached report, dated January 1, 2003, of a countywide property reappraisal for Banner conducted by Holliday on behalf of High Plains Appraisal Service (High Plains).
Five witnesses testified at the hearing, including Sharon Sandberg, the Banner County clerk and ex officio assessor. She testified that she requested the audit conducted by the Department of Property Assessment and Taxation in 2001-02 and that the audit disclosed certain deficiencies in her office, which she corrected. At least partially as a result of the audit, Banner County retained High Plains to conduct a countywide reappraisal for 2003. In determining property valuations for 2004, the assessor utilized data collected by High Plains for the 2003 reappraisal, including data for the Brenner property.
In June 2003, the Nebraska Real Property Appraiser Board (NRPAB) commenced an investigation which concluded that High Plains and appraiser Holliday had committed various errors during the countywide reappraisal for Banner County. NRPAB filed a complaint against Holliday. The complaint does not make specific reference to the Brenner property. NRPAB and Holliday reached a settlement in May 2006, in which settlement Holliday recognized that the allegations in the complaint were valid and that the allegations would be violations of Nebraska statutes and the NRPAB rules and regulations.[2] Holliday agreed in the 2006 settlement that she would no longer perform mass appraisals for any board of equalization in Nebraska.
The county assessor was aware of the complaint against Holliday and the settlement, but testified that she had no basis for concluding that there was any flaw in the actual data collected by High Plains in the countywide reappraisal for the 2003 tax year.
In determining the 2004 valuations, the assessor also utilized depreciation schedules previously developed by High Plains. She acknowledged that these differed from those provided in the Residential Cost Handbook, published by Marshall & Swift, LP, a reference manual commonly used in the valuation of real property. However, the assessor conducted a "depreciation study" and concluded that the depreciation tables developed by High Plains were appropriate.
The assessor testified that she used a computer program called TerraScan to determine property valuations for the 2004 tax season. She testified that an unspecified number of other Nebraska counties also utilized the TerraScan program. Data from the 2003 mass reappraisal was used by the TerraScan program in determining property valuations for 2004. The record card produced by the TerraScan program showing the 2004 valuation for the Brenner property states, "DATA USED FOR COST CALCULATIONS SUPPLIED BY MARSHALL & SWIFT." *809 The heading above the final calculation of assessment value is titled "Cost Approach From Marshall & Swift." The assessor testified that TerraScan "provided [her] with the costing tables and they called their date as of June of 2001." An entry on the 2004 Brenner record card states "Replacement cost new less depreciation was used in improvement valuation. Marshall Swift tables dated June 2001 were used for costing. Depreciation information is on file." The assessor admitted that she had never compared the base cost found in the Marshall & Swift handbook to the TerraScan results for any property in Banner County. She also testified that TerraScan was used to determine all property values in Banner County in the same manner.
The assessor acknowledged that she did not personally inspect the Brenner property prior to the 2004 valuation, asserting that she was denied access by the Brenners. When she personally inspected the property in December 2006, she confirmed that the data previously entered in the TerraScan program was generally correct. The inspection revealed nothing which caused the assessor to change her determination of value.
The assessor testified that in arriving at the 2004 valuation of the Brenner residence, she considered its condition to be "average" and its quality to be "average plus." She explained that the home had certain features which would not be expected in a home of "average" quality, so she rated the quality "between average and good." The TerraScan program uses a value of 30 for average quality and 40 for good quality. To indicate the "average plus" quality of the Brenner property, the assessor entered a value of 35.
Three members of the Brenner family testified at the hearing. Co-owner Lisa has a bachelor's degree in accounting and has experience in both private and public accounting. She holds an assessor's certificate and has attended "over 60 hours of appraisal education." She testified regarding various aspects of the construction and features of the home, which in her opinion is "average" in both quality and condition. Utilizing the Marshall & Swift Residential Cost Handbook, she concluded that the value of the home in 2004 was approximately $186,000. The only comparable property she could identify was a 3,175-square foot, one-story home which was built in 1976 and valued at $126,072 in 2004. Robert also testified about the quality and condition of the home and agreed with Lisa's opinion that its actual value in 2004 was $186,000. Maddie Lapaseotes, Lisa's daughter and Robert's stepdaughter, testified that the assessor and the county sheriff came to the home unexpectedly in July 2004, when the Brenners were away, and she did not allow them to enter.
Sheila Newell testified as a witness for the Brenners. Newell is licensed in Nebraska as a real estate broker and is also a certified general real property appraiser. At the time of the TERC hearing, she served as chair of the NRPAB. She personally inspected the Brenner home on several occasions between 1999 and 2006. Using the criteria of the Marshall & Swift Residential Cost Handbook, Newell testified that in her opinion, the quality of the home in 2004 was "average." In making this assessment, she considered the various characteristics of construction, including material, workmanship, design, and utility. Newell also testified that in her opinion, the condition of the home was "average" in 2004, based upon her observations. In response to questions from members of the TERC panel, Newell acknowledged that the determination of quality and condition of real estate was subjective, at least to some degree, and *810 that qualified appraisers could reach slightly differing conclusions. Newell also acknowledged that the home had certain features indicative of better than average quality which would support the assessor's determination of "average plus" quality. Newell did not express an opinion as to the actual value of the Brenner home in 2004.
In its written decision and order, TERC found that the Board's valuation of the residence as of the assessment date for the tax year 2004 was $220,374. It noted that the value was determined by the TerraScan program which implemented the cost approach, first calculating the replacement cost of the structure using tables developed by Marshall & Swift, and then deducting depreciation as determined on the basis of tables or schedules developed by the county assessor. The data used in the analysis was obtained in 2002 and used for the first time in 2003. TERC noted that while the Brenners argued generally that the data was so poor that any valuation based upon it would be unreasonable and arbitrary, "[n]o evidence was presented. . . concerning variances between data collected as shown on a valuation printout and actual characteristics" of the property. TERC noted that the only specific discrepancy claimed by the Brenners involved the quality of the home, which they claimed to be "average" and the assessor evaluated as "average plus." Exercising its statutory authority to utilize its own experience and technical competence in evaluating the evidence on this issue,[3] TERC concluded that the residence was "not of average quality as proposed by the [Brenners] and their appraiser." TERC also determined that Lisa's calculation of value using a cost approach was flawed and that the evidence was insufficient to allow a deduction for economic depreciation.
With respect to the Brenners' claim that their property was not "equalized" with the value of other parcels, TERC determined that the single property claimed by the Brenners to be comparable to theirs was not in fact comparable and that there was "no evidence before [it] that taxable value of the subject property is not the same proportion of actual value as is the taxable value of comparable property." TERC concluded that the evidence did not support a finding that the decision of the Board was unreasonable or arbitrary and that there was no evidence upon which it could grant relief, because the Brenners' "only evidence of actual value for the subject property is a flawed application of the cost approach and there is no evidence of `equalized' taxable value."
The Brenners filed a timely notice of appeal from this decision, and we moved the appeal to our docket on our own motion.

ASSIGNMENTS OF ERROR
The Brenners assign, restated, renumbered, and consolidated, that TERC erred in (1) applying an incorrect legal standard as to their burden of persuasion, (2) conducting the hearing in a manner that deprived them of procedural due process, (3) failing to conclude on the basis of the evidence that the 2004 valuation by the Board was arbitrary and capricious, (4) failing to find that the Board did not properly equalize their property, and (5) failing to consider and make findings on all issues presented.

STANDARD OF REVIEW
Decisions rendered by TERC shall be reviewed by an appellate court for errors appearing on the record of the commission.[4] *811 When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[5] Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record.[6]

ANALYSIS

TAXPAYER'S BURDEN OF PERSUASION
The first assignment of error presents an issue of law as to a taxpayer's burden of persuasion before TERC. Citing statutory authority and an opinion of the Nebraska Court of Appeals,[7] the TERC order in this case recited the legal principle that TERC "can grant relief only if there is clear and convincing evidence that the action of the . . . Board was unreasonable or arbitrary." The Brenners argue that because of amendments to the TERC statutes in 2004 and 2007, this principle is no longer correct.
Some background is necessary to resolve this issue. Prior to the 1995 enactment of the Tax Equalization and Review Commission Act (TERCA),[8] appeals from actions taken by a county board of commissioners were taken to the district courts.[9] Section 77-1511, as it was written at that time, provided that the district court
shall hear appeals and cross appeals [from a county board of equalization] as in equity and without a jury, and determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof. The court shall affirm the action taken by the board unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary, or unless evidence is adduced establishing that the property of the appellant is assessed too low.
Construing this statute, this court held that in such appeals,
[t]here is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board.[10]
*812 This court further held that in order to rebut this presumption,
the burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment.[11]
TERCA amended § 77-1511 by substituting TERC for the district court as the intermediate appellate tribunal, but it did not change the remaining provisions of the statute.[12] In early appeals under the amended statute, the Nebraska Court of Appeals applied our pre-TERCA case law construing the taxpayer's burden of persuasion under § 77-1511, noting that "the principles which were articulated from this statutory language when the district court heard these matters maintain viability now that [TERC] has taken over the district court's role."[13] In this court's first opportunity to consider an appeal from TERC, we agreed that these principles defined the taxpayer's burden of persuasion.[14]
Section 77-1511 was repealed in 2001; at the same time, § 77-5016(7) (Reissue 2003) was amended to read:
If the appellant presents no evidence to show that the action taken by the board or the Property Tax Administrator is incorrect, the commission shall affirm such action. If the appellant presents any evidence to show that the action taken by the board or the Property Tax Administrator is incorrect, such action shall still be affirmed unless evidence is adduced establishing that the action of the board or the Property Tax Administrator was unreasonable or arbitrary.[15]
At the time of the 2001 amendment, § 77-5016 already provided that TERC "shall hear appeals and cross appeals ... as in equity and without a jury and determine de novo all questions raised before the county board of equalization."[16] Thus, as a result of the 2001 amendment, § 77-5016(7) included essentially the same provisions previously codified at § 77-1511.
The Brenners argue that because of a 2004 amendment to § 77-5016, they should not have been required to present clear and convincing evidence to rebut the presumption that the Board faithfully performed its valuation duties. As a result of that amendment, § 77-5016(8) (Cum. Supp. 2004) provided:
In all appeals, excepting those arising under section 77-1606, if the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, the commission shall deny the appeal. If the appellant presents any evidence to show that the determination, or action appealed from is incorrect, such order, decision, *813 determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.[17]
The 2004 amendment to § 77-5016(8) simply recodifies with minor changes the language previously found in § 77-5016(7). That language, in turn, is traceable to § 77-1511 prior to its repeal. The taxpayer's burden of persuasion by "clear and convincing evidence" results from long-established judicial construction of this statutory language. We find no language in the 2004 amendment that would reasonably call into question our construction of the language which originated in the former § 77-1511. Where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent.[18]
For the sake of completeness, we note the Brenners' argument that a 2007 amendment[19] to § 77-5016(7) modified the burden of persuasion. That amendment, which became effective February 10, 2007, eliminated language requiring TERC to hear appeals "as in equity and without a jury and determine de novo all questions raised in the proceedings" and substituted a provision that TERC "may determine any question raised in the proceeding upon which an order, decision, determination, or action appealed from is based" and "may consider all questions necessary to determine taxable value of property as it hears an appeal or cross appeal."[20] We do not read this amendment to have any effect on the taxpayer's burden of persuasion in a TERC appeal. It simply restates the concept of de novo review in a manner more appropriate for a nonjudicial tribunal, and specifically authorizes TERC to consider any issues it deems pertinent to a valuation determination, whether or not the issue was raised before a board of equalization. We conclude that TERC did not err in its articulation and application of the Brenners' burden of persuasion.

PROCEDURAL DUE PROCESS
The Brenners argue that TERC conducted the appeal hearing in a manner which deprived them of their due process rights to present evidence and be heard before an impartial board.[21] They contend that formal rules of evidence were applied despite the fact that the hearing was to be informal and that the chairman of the TERC panel frequently interrupted their presentation and excluded certain evidence.
TERCA specifies the procedures applicable to taxpayer appeal hearings.[22] Such hearings are to be informal "unless a formal hearing is granted" upon the request of a party.[23] In this case, the order for hearing specified that it was to be informal. Thus, TERC was required to "give probative effect to evidence which possesses probative value commonly accepted by reasonably prudent persons in the conduct of their affairs excluding incompetent, irrelevant, *814 immaterial, and unduly repetitious evidence" and to honor statutory privilege rules, but was "not otherwise . . . bound by the usual common-law or statutory rules of evidence."[24]
These statutory procedures clearly do not require TERC to receive any and all evidence offered during an informal hearing. Rather, TERC is specifically empowered to assess the probative value of proffered evidence and exclude that which it determines to be "incompetent, irrelevant, immaterial, and unduly repetitious."[25] In a judicial proceeding, a trial court has the discretion to determine the relevancy and admissibility of evidence.[26] Likewise, TERC must be afforded some discretion in determining the probative value and admissibility of evidence in an informal appeal hearing, and it follows that a proper exercise of such discretion cannot constitute a denial of procedural due process.
In their brief, the Brenners list various rulings rejecting evidence they offered without explaining why they contend the rulings were erroneous. In several of these instances, TERC properly rejected evidence offered by the Brenners, because it duplicated materials which were already included in the case file or which TERC had indicated it would consider without inclusion in the record pursuant to § 77-5016(3). These included regulations and other public records pertaining to assessment and taxation and the Brenners' notice of appeal filed with TERC, which they offered twice. The Brenners also complain that TERC sustained a foundational objection to their initial offer of two unidentified photographs. In rejecting the initial offer, the TERC chairman explained that it would be "material for [TERC] to know what, when and under what conditions and under what circumstances and by whom the photographs . . . were taken." When Lisa subsequently testified about the subject matter of the photographs, they were reoffered and received. Thus there was no error by TERC.
The TERC chairman sustained hearsay objections by the Board to evidence offered by the Brenners but also sustained hearsay objections made by the Brenners with respect to evidence offered by the Board. The TERC chairman properly explained that TERC could not consider hearsay evidence, because the applicable provision of TERCA gives parties the right to cross-examine all witnesses.[27]
The Brenners separately argue that TERC erroneously refused to receive and consider the report of the audit of the Banner County assessor's office by the Department of Property Assessment and Taxation, which pertained to the period of October 2001 to January 2002. TERC sustained a relevance objection to this audit, because there was no apparent connection between the events described in it and the manner in which the 2004 valuation of the Brenners' property was conducted. The Brenners made an offer of proof, stating that the audit report noted various irregularities in data collection and "establishe[d] a pattern to which in the year 2004 would indicate . . . continued arbitrary and capricious, unreasonable actions." We conclude that TERC did not abuse its discretion in excluding this and other evidence which it found lacking in probative value as to the determination of the *815 actual value for the Brenner property for the 2004 tax year.
The Brenners also argue that the TERC chairman interrupted their presentation in a manner which demonstrated bias. While interruptions did occur, we cannot conclude from the record that they were indicative of bias. In one instance, the chairman noted that little could be gained from what he deemed imprecise questions and answers with respect to dates and terminology. The chairman specifically noted that he was not prejudging the case, but, rather, encouraging counsel to focus on presenting substantive information relevant to valuation of the property for the 2004 tax year. From our review of the record as a whole, we find no basis for concluding that the chairman or any member of the TERC panel was biased against the Brenners. The record reflects that TERC afforded the Brenners an opportunity to be heard and present their case before an impartial tribunal. They were not denied procedural due process.

VALUATION
The "actual value" of real property is defined by Nebraska law as
the most probable price expressed in terms of money that a property will bring if exposed for sale in the open market, or in an arm's length transaction, between a willing buyer and willing seller, both of whom are knowledge able concerning all the uses to which the real property is adapted and for which the real property is capable of being used.[28]
In tax valuation cases, actual value is largely a matter of opinion and without a precise yardstick for determination with complete accuracy.[29] As we have noted, the Brenners had the burden of persuading TERC that the Board's valuation of their property was arbitrary or unreasonable. An administrative agency's decision is "arbitrary" when it is made in disregard of the facts or circumstances without some basis which would lead a reasonable person to the same conclusion.[30] Here, both the Board and the Brenners utilized the cost approach, which is an accepted method of determining the actual value of real property. There was no other evidence of value. The Brenners challenge the assessor's application of the cost approach to arrive at the valuation which was accepted by the Board.
The Brenners contend that no meaningful valuation could have occurred, because the assessor did not personally inspect the property before arriving at the 2004 valuation. The record reflects that the assessor's office had basic information about the interior of the home obtained by data collectors during and after construction. Generally, an assessor may reasonably rely on physical measurements made by an appraiser as part of a mass appraisal.[31] There is conflicting evidence as to whether the Brenners thwarted her efforts to personally inspect the property prior to the 2004 valuation. Of greater significance is the assessor's testimony that when she did inspect the property in 2006, she found nothing which would change her opinion regarding the 2004 valuation. Under similar circumstances presented in Kohl's Dept. Stores v. Douglas Cty. Bd. of *816 Equal.,[32] the Court of Appeals determined that the presumption of validity was properly applied to the valuation as determined by a board of equalization.
The Brenners also argue that the assessor's use of the TerraScan computer program to perform the actual computations used for the 2004 valuation was arbitrary and unreasonable. They claim that the program used flawed data obtained from the 2003 countywide reappraisal, but they could not identify any specific errors in the data. They also argue that the TerraScan program utilized an allegedly nonexistent "June 2001" Marshall & Swift costing table to perform the computations. The record on this point is somewhat unclear. The assessor testified that she did not verify the costing tables used by TerraScan, and Lisa testified that she utilized a Marshall & Swift costing table dated June 2000, which was the most recent one she could find dated prior to June 2001. TERC noted that a "[s]pecific cost table for June 2001 may not exist. The practice of Marshall & Swift is to issue quarterly adjustment factors," and "[t]he adjustment factors have to be applied to a base cost to derive a cost as of a given quarterly date." We note that the documents which TERC was authorized by § 77-5016(3) to consider and utilize without including in the record included a list of quarterly multipliers dated June 2001 published in conjunction with the Marshall Valuation Service manual, published by Marshall & Swift, LP, to be used "to trend the costs published on the preceding pages to a current date and to adjust the costs by location." We cannot determine from this record that the TerraScan program utilized incorrect costing information. While we acknowledge that this raises some questions regarding the costing methodology employed by the assessor, we cannot conclude that the valuations derived from the TerraScan program utilizing Marshall & Swift costing information was arbitrary or unreasonable.
The record reflects one significant difference between the data utilized by TerraScan and that used by the Brenners in calculating the actual 2004 value of the residence: the evaluation of the quality of the structure. Lisa and Newell testified that the home was of average quality, based upon the factors listed in the Marshall & Swift Residential Cost Handbook. However, both conceded that the home had some desirable features which would not ordinarily be found in a home of average quality, including ceramic tile, wood shake shingle roofing, and a vaulted ceiling. The assessor testified that based upon these features, she rated the home as being of "average plus" quality, meaning that the quality of the home was "between average and good." Newell conceded that determination of the quality of a home for purposes of appraisal is somewhat subjective and that different qualified appraisers evaluating the same property could reach different conclusions within a reasonable range. Utilizing its own experience and technical expertise, as the law permits,[33] TERC determined that "the residence on the subject property is not of average quality as proposed by the [Brenners] and their appraiser." This conclusion is supported by competent evidence, including the aforementioned testimony of Lisa, Newell, and the assessor.
The Brenners also contend that the assessor's valuation process did not include a sufficient adjustment for depreciation. *817 Physical depreciation results from deterioration of improvements over time.[34] The assessor testified that she used a 70-year "average life" in determining the depreciation allowance, which differed from the 55- to 60-year average life used by Marshall & Swift. This resulted in an 8-percent deduction for physical depreciation. In her computations, Lisa utilized a 60-year average life, resulting in a 10-percent deduction for physical depreciation. She also included a 5-percent allowance for "locational depreciation."
The Brenners cite no authority for their argument that the assessor was legally required to use the 55- to 60-year average life utilized in the Marshall & Swift depreciation schedules. Regulations issued by the Nebraska Department of Property Assessment and Taxation require an assessor, as a part of the analysis of valuation based on the cost approach, to use the Marshall Valuation Service "as published and updated by Marshall and Swift Publishing Company . . . for uniform identification of the physical characteristics of real property."[35] The regulations do not specifically mention Marshall & Swift depreciation tables, but require an assessor, in the analysis of the cost approach, to develop and substantiate "various forms of depreciation which can be shown to exist through a study of the local market."[36] The assessor testified that she conducted such a study and determined that a 70-year average life was acceptable. We agree with TERC that the record does not support the "locational depreciation" adjustment claimed by the Brenners.
The Brenners argue that TERC ignored competent evidence presented by them and "failed to address" their assertion of quality, condition, opinion, and calculation of value, made as owners of the property. After discussing the evidence presented, TERC concluded that
even if all of the allegations of the [Brenners] are believed, there is no evidence on which [TERC] could grant relief. The [Brenners'] only evidence of actual value for the subject property is a flawed application of the cost approach and there is no evidence of "equalized" taxable value.
The decision and order clearly reflects that TERC did consider and address these issues, but that TERC simply was not persuaded the Brenners had met their burden of showing that the Board acted arbitrarily or unreasonably in determining the value of their property.
Lisa and Robert both gave opinions as to the value of their home and assign error to TERC's rejection of their opinions of value. A resident owner who is familiar with his or her property and knows its worth is permitted to testify as to its value without further foundation.[37] This principle rests upon the owner's familiarity with the property's characteristics, its actual and potential uses, and the owner's experience in dealing with it.[38] When a county board of equalization has determined the value of the property, uniformly *818 and impartially assessed through a formula in substantial compliance with statutes governing taxation, for reversal of the board's action, a taxpayer must show more than a difference of opinion concerning the assessed value of the taxpayer's real estate.[39] Here, the Brenners have not shown more than a difference of opinion between their valuations of the residence and those of the county. The TERC order shows that it considered the Brenners' opinions, including Lisa's calculation using the Marshall & Swift costing tables, and rejected their evidence concerning the value of the residence as "not persuasive." TERC's decision to accept the opinion of the county assessor over those of the taxpayers was neither arbitrary nor unreasonable.
We have considered the Brenners' other arguments with respect to valuation and conclude they are without merit. As we view the record, there is some ambiguity and lack of clarity in both the Brenners' and the assessor's valuation determinations. However, we agree with TERC that in the end, the record reflects nothing more than a difference of opinion between the Board and the Brenners regarding the actual value of the residence for purposes of 2004 taxation, and does not establish that the Board acted arbitrarily or unreasonably in arriving at its valuation.

EQUALIZATION
In their appeal to TERC, the Brenners claimed that the taxable value of their property as of January 1, 2004, was not equalized with the value of other real property in the county. The Brenners assign error to the determination by TERC that the record did not support this assertion.
The Nebraska Constitution requires that real property be taxed "by valuation uniformly and proportionately."[40] Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value.[41] The purpose of equalization of assessments is to bring the assessment of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax.[42]
The Brenners attempted to prove their allegation' that the Board failed to properly equalize assessments through the county assessor's records pertaining to a single residential property built in 1976, which the Brenners claimed to be comparable to theirs. TERC concluded that the property was not comparable to the Brenners' residence and that there was no other evidence in the record demonstrating that the taxable value of the Brenner property was "not the same proportion of actual value as is the taxable value of comparable property." We agree and conclude that this assignment of error is without merit.

CONSIDERATION OF ALL ISSUES
The Brenners argue that TERC erred in failing to make specific findings on each of their arguments. They contend that such findings are required by § 77-5016(7) as amended and effective on February 10, 2007, which provides that TERC "may determine any question raised in the proceeding upon which an order, decision, determination, or action appealed from is *819 based" and "may consider all questions necessary to determine taxable value of property as it hears an appeal or cross appeal." The statute enables TERC to address all issues it considers pertinent in a valuation appeal, but it does not require TERC to make specific findings with respect to arguments or issues which it does not deem significant or necessary to its determination.
In their notice of appeal, the Brenners listed eight specific reasons for appealing the determination of the Board. In its decision and order, TERC summarized these reasons as pertaining to valuation and equalization, and addressed those issues. We conclude that TERC addressed and decided all issues which were properly before it.

CONCLUSION
For the reasons discussed, we affirm the decision and order of TERC, based upon our determination that it is supported by competent evidence and is neither arbitrary, capricious, nor unreasonable.
AFFIRMED.
NOTES
[1] See Neb.Rev.Stat. § 77-5016(3) (Cum. Supp. 2006).
[2] Neb.Rev.Stat. §§ 76-2237 and 76-2238 (Reissue 2003); 298 Neb. Admin. Code, ch. 2, § 001 (2005).
[3] See § 77-5016(5).
[4] Neb.Rev.Stat. § 77-5019(5) (Cum. Supp. 2006); Marshall v. Dawes Cty. Bd. of Equal., 265 Neb. 33, 654 N.W.2d 184 (2002).
[5] See Marshall v. Dawes Cty. Bd. of Equal., supra note 4.
[6] City of York v. York Cty. Bd. of Equal, 266 Neb. 297, 664 N.W.2d 445. 266 Neb. 297, 664 N.W.2d 445 (2003); City of Alliance v. Box Butte Cty. Bd. of Equal, 265 Neb. 262, 656 N.W.2d 439 (2003).
[7] See, § 77-5016(8); Omaha Country Club v. Douglas Cty. Bd. of Equal., 11 Neb.App. 171, 645 N.W.2d 821 (2002).
[8] See 1995 Neb. Laws, L.B. 490, § 153.
[9] Neb.Rev.Stat. §§ 77-1510 and 77-1511 (Reissue 1990). See US Ecology v. Boyd Cty. Bd. of Equal., 256 Neb. 7, 588 N.W.2d 575 (1999).
[10] Ideal Basic Indus. v. Nuckolls Cty. Bd. of Equal., 231 Neb. 653, 654-55, 437 N.W.2d 501, 502 (1989).
[11] Bumgarner v. County of Valley, 208 Neb. 361, 366, 303 N.W.2d 307, 310 (1981).
[12] 1995 Neb. Laws, L.B. 490, § 153.
[13] J.C. Penney Co. v. Lancaster Cty. Bd. of Equal., 6 Neb.App. 838, 850, 578 N.W.2d 465. 6 Neb.App. 838, 578 N.W.2d 465. 473 (1998). See, Forney v. Box Butte Cty. Bd. of Equal., 7 Neb.App. 417, 582 N.W.2d 631 (1998); Lancaster Cty. Bd. of Equal. v. Condev West, Inc., 7 Neb.App. 319, 581 N.W.2d 452 (1998).
[14] US Ecology v. Boyd Cty. Bd. of Equal., supra note 9. See Garvey Elevators v. Adams Cty. Bd. of Equal, 261 Neb. 130, 621 N.W.2d 518 (2001).
[15] 2001 Neb. Laws, L.B. 465, §§ 7, 12.
[16] Id. at § 7.
[17] 2004 Neb. Laws, L.B. 973, § 51.
[18] Semler v. Sears, Roebuck & Co., 268 Neb. 857, 689 N.W.2d 327. 268 Neb. 857, 689 N.W.2d 327 (2004); Chapin v. Neuhoff Broad.-Grand Island, Inc., 268 Neb. 520, 684 N.W.2d 588 (2004).
[19] See 2007 Neb. Laws, L.B. 167, § 6.
[20] Id.
[21] See Krusemark v. Thurston Cty. Bd. of Equal., 10 Neb.App. 35, 624 N.W.2d 328 (2001).
[22] Neb.Rev.Stat. §§ 77-5015 to 77-5019 (Cum. Supp. 2006 & Supp. 2007).
[23] § 77-5016 (Supp.2007).
[24] § 77-5016(1).
[25] Id.
[26] Karel v. Nebraska Health Sys., 274 Neb. 175, 738 N.W.2d 831 (2007).
[27] § 77-5016(4)
[28] Neb.Rev.Stat. § 77-112 (Reissue 2003).
[29] US Ecology v. Boyd Cty. Bd. of Equal., supra note 9; Cabela's, Inc. v. Cheyenne Cty. Bd. of Equal, 8 Neb.App. 582, 597 N.W.2d 623 (1999).
[30] Phelps Cty. Bd. of Equal. v. Graf, 258 Neb. 810, 606 N.W.2d 736 (2000).
[31] See Cabela's, Inc. v. Cheyenne Cty. Bd. of Equal., supra note 29.
[32] Kohl's Dept. Stores v. Douglas Cty. Bd. of Equal., 10 Neb.App. 809, 638 N.W.2d 877 (2002).
[33] § 77-5016(5).
[34] First Nat. Bank v. Otoe Cty., 233 Neb. 412, 445 N.W.2d 880 (1989); Cabela's, Inc. v. Cheyenne Cty. Bd. of Equal., supra note 29.
[35] 350 Neb. Admin. Code, ch. 10, § 003.04 (2003).
[36] 350 Neb. Admin. Code, ch. 50, § 002.03B(2) (2001).
[37] See, US Ecology v. Boyd Cty. Bd. of Equal., supra note 9; Livingston v. Jefferson Cty. Bd. of Equal., 10 Neb.App. 934, 640 N.W.2d 426 (2002); Schmidt v. Thayer Cty. Bd. of Equal., 10 Neb.App. 10, 624 N.W.2d 63 (2001).
[38] Schmidt v. Thayer Cty. Bd. of Equal, supra note 37.
[39] Livingston v. Jefferson Cty. Bd. of Equal., supra note 37, citing Cabela's, Inc. v. Cheyenne Cty. Bd. of Equal., supra note 29.
[40] Neb. Const. art. VIII, § 1.
[41] MAPCO Ammonia Pipeline v. State Bd. of Equal., 238 Neb. 565, 471 N.W.2d 734 (1991).
[42] Id.; Cabela's, Inc. v. Cheyenne Cty. Bd. of Equal., supra note 29.