17 Neb. App. 221
MICHAEL R. ZABAWA, APPELLANT,
v.
DOUGLAS COUNTY BOARD OF EQUALIZATION, APPELLEE.
No. A-08-069.
Court of Appeals of Nebraska.
Filed November 18, 2008.
Richard L. Anderson and John M. Prososki, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellant.
Donald W. Kleine, Douglas County Attorney, and Thomas S. Barrett for appellee.
INBODY, Chief Judge, and MOORE and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Michael R. Zabawa appeals the order of the Nebraska Tax Equalization and Review Commission (TERC) which upheld the decision of the Douglas County Board of Equalization (the Board) denying his property tax protest. Despite finding Zabawa's property "highly comparable" to one afforded a substantial reduction in value through the protest process, TERC concluded that the Board had no duty to equalize the valuations of comparable properties where both valuations were protested. This resulted in Zabawa's property's being taxed at market value even though TERC determined the comparable property was taxed at only 75.8 percent of market value. We find both a constitutional and a statutory duty to equalize such valuations. We therefore reverse, and remand with directions to reduce Zabawa's value accordingly.

BACKGROUND
Zabawa owns the property at issue, 668 Dillon Drive, which is located in Omaha, Douglas County, Nebraska. It includes a one-story, brick, ranch-style house that was built in 1963 and has 2,871 square feet. The house has four bedrooms and three bathrooms and sits on a .35-acre lot. It also has an attached garage and a partially finished basement. The Douglas County assessor valued the property at $396,000 in 2006. The property was previously valued at $263,800 in 2005.
Zabawa filed a protest of the 2006 valuation with the Board. A referee then recommended that the property's valuation be reduced to $360,000 because he believed that Zabawa's house, assessed at $137.94 per square foot, was most similar to a comparable property that had been assessed at $113.97 per square foot. Subsequently, the referee coordinator recommended that the original valuation stand and noted that Zabawa's property value was in line with that of 676 Dillon Drive, a neighboring property valued at $133 per square foot and $363,100 total. The Board adopted this recommendation.
During the same period, the owner of 676 Dillon Drive protested the valuation of his property with the Board. A different referee heard his initial protest. Zabawa testified that he and the owner of 676 Dillon Drive both made the same argumentthat the property valuation should be decreased because the property on the other side of Zabawa, 660 Dillon Drive, was comparable and because there had been a sanitary sewer backup in 2004 in that area. The taxable value of 676 Dillon Drive was reduced to a "reconciled" value of $275,000, but the "market" value was $362,547.
Zabawa then appealed the Board's decision to TERC. On December 3, 2007, TERC heard Zabawa's appeal. Zabawa introduced evidence regarding the comparability of 660 Dillon Drive and 676 Dillon Drive, the comparability of 11 other properties in the neighborhood, and the differing valuations of his property and 676 Dillon Drive subsequent to similar valuation protests. TERC upheld the Board's valuation. However, in doing so, TERC also determined that Zabawa's property and 676 Dillon Drive were "highly comparable" and noted that the Board had ultimately assessed the similar properties at "greatly disparate taxable values." TERC noted that the "reconciled" postprotest value of 676 Dillon Drive was 75.8 percent of its total listed market value in the county records. TERC also considered "whether the . . . Board has a duty to review and reconcile the results in all protests" and determined that the Board had no such duty. TERC also found that the valuation of Zabawa's property was not the result of "intentional ill will."
Zabawa timely appeals.

ASSIGNMENTS OF ERROR
Zabawa alleges 13 assignments of error, which we restate and consolidate as follows: First, Zabawa alleges that TERC used an incorrect standard to review the Board's decision. Zabawa also asserts that TERC applied the standard of review improperly. Finally, Zabawa alleges that TERC improperly upheld the Board's decision when it found that the subject property and 676 Dillon Drive were "highly comparable" but had "greatly disparate taxable values."

STANDARD OF REVIEW
[1-3] Decisions rendered by TERC shall be reviewed by an appellate court for errors appearing on the record of the commission. Brenner v. Banner Cty. Bd. of Equal., 276 Neb. 275, 753 N.W.2d 802 (2008). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id. Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. Id.

ANALYSIS

Standard of Review.
[4] Zabawa asserts that TERC used an incorrect standard of review in deciding his case. Under Neb. Rev. Stat. § 77-5016(8) (Supp. 2007), TERC's standard of review in an appeal from the Board is as follows:
In all appeals, excepting those arising under section 77-1606, if the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, the commission shall deny the appeal. If the appellant presents any evidence to show that the order, decision, determination, or action appealed from is incorrect, such order, decision, determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.
The Nebraska Supreme Court has construed this statutory standard of review to mean that
"[t]here is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board."
Brenner, 276 Neb. at 283-84, 753 N.W.2d at 811 (quoting Ideal Basic Indus. v. Nuckolls Cty. Bd. of Equal., 231 Neb. 653, 437 N.W.2d 501 (1989)). The court further explained that to rebut the presumption that the board of equalization properly performed its official duties,
"the burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon his property when compared with valuations placed upon other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty . . . ."
Brenner, 276 Neb. at 284, 753 N.W.2d at 812 (quoting Bumgarner v. County of Valley, 208 Neb. 361, 303 N.W.2d 307 (1981)).
For the most part, TERC's decision set forth this standard of review in the correct language. However, in the analysis portion of TERC's decision, it erred when it changed the words "intentional will" to "intentional ill will." Webster's Encyclopedic Unabridged Dictionary of the English Language 711 (1989) defines "ill will" as a "hostile feeling; antipathy; enmity." The taxpayer does not have to show that the Board's actions were the result of its antipathy or a hostile feeling toward the taxpayera showing of intentional error suffices. We agree that the Board did not intentionally commit the error, but this does not end the analysis. Where the taxpayer succeeds in establishing that the Board's valuation is grossly excessive to that of comparable properties, the standard of review contemplates two reasons sufficient to rebut the statutory presumption favoring the Board's decision. Systematic exercise of intentional will constitutes one reason, but the standard also specifies failure of plain duty as an equally sufficient basis.

Plain Duty.
Zabawa argues that TERC defined the "plain duty" portion of the standard of review incorrectly. TERC concluded that the Board had no plain duty to equalize the disparate valuations of comparable real properties provided that the differences were the result of separate valuation protests. We disagree. Nebraska law requires that comparable properties be valued similarly and does not provide an exception merely because both owners exercised their right to contest the valuations.
Before turning to a discussion of the controlling law, we observe that TERC found Zabawa's property and 676 Dillon Drive to be highly comparable. In the instant appeal, Zabawa relies on this determination, which finds substantial support in the evidence. The properties were constructed at about the same time1963 and 1961, respectively. They are roughly the same size2,871 square feet compared to 2,728 square feet. Both were one-story, ranch-style homes constructed from similar materials. The Douglas County assessor rated both properties as being of "good" quality. From 1994 to 2005, Zabawa's property had been valued at 107 to 110 percent of the taxable value of 676 Dillon Drive. While the finished portion of the basement of 676 Dillon Drive was 400 square feet larger than Zabawa's basement, this would suggest a lower rather than a higher valuation for the Zabawa property. The assessor's records do differentiate the "condition" of the properties rating Zabawa's property as "good" condition while 676 Dillon Drive was "average." However, neither party suggests that this difference undermines TERC's finding of comparability. There was no evidence in the record that suggested that either property had undergone significant changes tending to affect property values. Zabawa testified that subsequent to purchasing the property in 1998, he had only maintained its condition. Zabawa had repainted the wood portion of the exterior of the house, replaced carpet, done some minor interior painting, and replaced a backwater device. Despite all these similarities between the two properties, after the tax protests were concluded in 2006, Zabawa's property was valued at 144 percent of the taxable value of 676 Dillon Drive.
[5,6] TERC's conclusion that these comparable properties need not be valued similarly directly contradicts Nebraska law. The Nebraska Constitution provides that "[t]axes shall be levied by valuation uniformly and proportionately upon all real property . . . ." Neb. Const. art. VIII, § 1. Neb. Rev. Stat. § 77-1501 (Cum. Supp. 2006) mandates that "[t]he county board of equalization shall fairly and impartially equalize the values of all items of real property in the county so that all real property is assessed uniformly and proportionately."
[7,8] Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value. Scribante v. Douglas Cty. Bd. of Equal., 8 Neb. App. 25, 588 N.W.2d 190 (1999). If a taxpayer's property is assessed in excess of the value at which others are taxed, then the taxpayer has a right to relief. Cabela's, Inc. v. Cheyenne Cty. Bd. of Equal., 8 Neb. App. 582, 597 N.W.2d 623 (1999).
Even if the properties were not comparable, the Board could not value Zabawa's real property at its market value but value 676 Dillon Drive at 75.8 percent of its market value. In Chief Indus. v. Hamilton Cty. Bd. of Equal., 228 Neb. 275, 422 N.W.2d 324 (1988), the taxpayer rebutted the presumption that the county board of equalization's decision was correct by showing that the assessor had undervalued other land in the county by 43 to 53 percent but had valued the taxpayer's dissimilar land at its full value. The court explained that "[t]he right of a taxpayer whose property alone is taxed at 100 percent of its true value is to have its assessment reduced to the percentage of that value at which others are taxed." Id. at 286, 422 N.W.2d at 331. See, also, Konicek v. Board of Equalization, 212 Neb. 648, 324 N.W.2d 815 (1982).
Nebraska law also makes it clear that when properties are comparable to the extent that Zabawa's property was comparable with 676 Dillon Drive, the Board has the plain duty to value them similarly. The Board's failure to do so is sufficient to rebut the presumption that its decision was correct. In Scribante, supra, a real property owner rebutted the presumption that the county board of equalization was correct when all parties agreed that the subject property was comparable to a property which had a much lower per-square-foot valuation. In Scribante, the subject property was valued at $162.02 per square foot and the comparable property was valued at $88.14 per square foot.
Because TERC found that Zabawa's property was highly comparable to 676 Dillon Drive, and because TERC found that the properties had "greatly disparate taxable values," TERC was incorrect to conclude that Zabawa had not rebutted the presumption that the Board's decision was correct. The Board had the plain duty under § 77-1501 to value these comparable properties at similar amounts. By adjudicating tax protests in greatly disparate amounts676 Dillon Drive at 75.8 percent of its market value and Zabawa's comparable property at full market valuethe Board failed to fulfill its "plain duty" to equalize property valuations. Zabawa rebutted the presumption that the Board's decision was correct.
[9] TERC stated that the Board had no duty to equalize in this context, because Nebraska statutes do not expressly provide for a procedure to rectify dissimilar protest results for comparable real properties. We disagree. Section 77-1501 implements the constitutional mandate to value all real property uniformly and proportionately. Moreover, Neb. Rev. Stat. § 77-1502.01 (Reissue 2003) reposes broad power in the Board to carry out its duty to equalize.
The county board of equalization, after considering all papers relating to the protest and the findings and recommendations of the referee, may make the order recommended by the referee or any other order in the judgment of the board of equalization required by the findings of the referee, or may hear additional testimony, or may set aside such findings and hear the protest anew.
Id. Thus, the statutes empower the Board to carry out its duty to equalize property tax values as required by § 77-1501 and provide the means to do so. The ultimate responsibility to equalize valuations rests upon the Board, and it cannot avoid this duty by using the power to appoint referees.
Section 77-5016(8) then required TERC to determine whether the valuation of Zabawa's property was unreasonable and arbitrary. To set the valuation of similarly situated property, i.e., comparables, at materially different levels, i.e., value per square foot, is by definition unreasonable and arbitrary, under the Nebraska Constitution. Scribante v. Douglas Cty. Bd. of Equal., 8 Neb. App. 25, 588 N.W.2d 190 (1999). We note that TERC ultimately valued Zabawa's property at its full market value but found that 676 Dillon Drive was "highly comparable" and valued at 75.8 percent of its market value. As a matter of law, the Board's valuation of Zabawa's property was unreasonable and arbitrary because it assigned substantially different values to comparable properties. Thus, TERC erred in failing to reduce the taxable value of Zabawa's property.
Pursuant to Chief Indus. v. Hamilton Cty. Bd. of Equal., 228 Neb. 275, 422 N.W.2d 324 (1988), Zabawa is entitled to have his property taxed at the same percentage of market value as are other properties. Therefore, Zabawa is entitled to relief as a matter of law. Zabawa requested a valuation of $290,000 before TERC. In this case, Zabawa is entitled to have his property taxed at the same rate as 676 Dillon Drive, or 75.8 percent of market value. Thus, in order to value Zabawa's property at a rate that is not unreasonable or arbitrary, TERC must reduce the tax valuation of Zabawa's property to $300,168.

CONCLUSION
We conclude that TERC incorrectly applied the standard of review. We reverse TERC's determination that Zabawa failed to overcome the presumption that the Board faithfully performed its official duties. In light of TERC's factual findings that Zabawa's property was "highly comparable" to the other property and that the properties had ultimately been assessed at "greatly disparate taxable values," we determine as a matter of law that the Board failed to perform a plain duty when it failed to equalize Zabawa's property valuation and that its valuation of Zabawa's property was unreasonable and arbitrary. We find that Zabawa is entitled to relief as a matter of law and remand this matter to TERC with directions to reduce the tax valuation of Zabawa's property to $300,168.
REVERSED AND REMANDED WITH DIRECTIONS.