IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MILLARD LUMBER V. DOUGLAS CTY. BD. OF EQUAL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MILLARD LUMBER, INC., APPELLANT,

V.

DOUGLAS COUNTY BOARD OF EQUALIZATION, APPELLEE.

Filed August 27, 2019.    No. A-18-1091.

Appeal from the Tax Equalization and Review Commission. Affirmed.

Jordan W. Adam, Fraser Stryker, P.C., L.L.O., for appellant.

Jennifer C. Clark, Deputy Douglas County Attorney, for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Millard Lumber, Inc., appeals from an order of the Tax Equalization and Review Commission (TERC) which affirmed a decision of the Douglas County Board of Equalization (Board) denying Millard Lumber's protest of the 2017 valuation of its property. We conclude that the TERC decision is supported by competent evidence and is neither arbitrary nor capricious. We therefore affirm.

### BACKGROUND

Millard Lumber owns a 609,633-square-foot distribution warehouse located on 1,440,093 square feet of land in Douglas County, Nebraska (the Subject Property). The structure was built in 1958 and Millard Lumber purchased the Subject Property in 2006. The Douglas County assessor determined that the value of the Subject Property was $13,496,200 for the 2017 tax year. This value consisted of a land valuation of $4,320,300 and an improvement value of $9,175,900.

Millard Lumber protested the assessment to the Board and requested a valuation of $9,410,735. Millard Lumber's requested valuation consisted of a land valuation of $4,320,300, and an improvement value of $5,090,435. The Board affirmed the original assessment of the Subject Property, and determined that its taxable value was $13,496,200. Millard Lumber appealed the Board's decision to TERC.

A hearing was held before TERC in February 2018. At the hearing, Millard Lumber argued that the 2017 tax assessment was not equalized with the property adjacent to it (the Comparable Property). The only evidence presented at the hearing consisted of testimony from Brent Reeder on behalf of Millard Lumber. Reeder testified that he was a general contractor and had done renovation work for Millard Lumber on the Subject Property. Reeder testified that the improvement value on the Subject Property was nearly double that of the Comparable Property, when broken down by square foot, with the value of the improvements on the Subject Property being calculated at $15.05 per square foot, and the value of the improvements on the Comparable Property being calculated at $8.50 per square foot.

Reeder asserted to TERC that the Subject Property and the Comparable Property were very similar. The properties were originally built in the 1950's and were part of the same campus. Although the Comparable Property is larger than the Subject Property, both buildings were used in the same manner. Reeder also informed TERC that both buildings were constructed similarly, they had similar clear heights for docking, heavy industrial floor slabs, similar lighting, similar roofing structure and membrane, gas-fired heat systems and were fire-sprinkler protected. Reeder did acknowledge that the Comparable Property used a gas-fired heat system which used forced air, which was less efficient than the heating system used by the Subject Property.

Additionally, in Reeder's opinion, the condition of the buildings was essentially the same. Further, both properties leased out office space to tenants. Reeder emphasized that the two buildings were "as comparable as you can get" for properties in Omaha. On cross-examination, Reeder admitted that he was not an appraiser and did not have certificates or licenses for assessment or appraisal. But, on redirect, Reeder stated that he performed contracting work on both the Subject Property and the Comparable Property, and was therefore familiar with both properties. The Board did not present any evidence.

Following the hearing, TERC issued an order affirming the decision of the Board, and assessing Millard Lumber a tax valuation of $13,496,200 on the Subject Property. TERC specifically found that Millard Lumber did not present clear and convincing evidence demonstrating that the Subject Property was similar to the Comparable Property for purposes of an equalization analysis. Millard Lumber appealed TERC's order to this court.

## ASSIGNMENTS OF ERROR

Millard Lumber assigns, restated, that TERC erred in affirming the Board's decision denying Millard Lumber's 2017 property tax valuation protest.

## STANDARD OF REVIEW

Decisions rendered by TERC shall be reviewed by an appellate court for errors appearing on the record of the commission. *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d

802 (2008). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *Id*.

ANALYSIS

We note at the outset of our analysis that Millard Lumber does not argue that the valuation of the Subject Property was incorrect, i.e., that it could not be sold at the valuation set by the assessor. Rather, it argues only that it received a grossly excessive tax assessment when compared to the Comparable Property, which it argued was similar to the Subject Property. Because Millard Lumber does not challenge the actual valuation of the Subject Property, we focus our analysis on the dispositive issue of the similarity between the two properties for equalization purposes.

The Nebraska Constitution requires that real property be taxed "by valuation uniformly and proportionately." *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. at 294, 753 N.W.2d at 818. Equalization is the process of ensuring that all taxable property is placed on the assessment rolls at a uniform percentage of its actual value. *Brenner v. Banner Cty. Bd. of Equal., supra*. The purpose of the equalization of assessments is to bring the assessment of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax. *Id*.

The burden of proof is on the taxpayer to establish the taxpayer's contention that the value of the taxable property has been arbitrarily or unlawfully fixed by the county board of equalization at an amount greater than its actual value, or that its value has not been fairly and properly equalized when considered in connection with the assessment of other property and that such disparity and lack of uniformity result in a discriminatory, unjust, and unfair assessment. *Omaha Country Club v. Douglas Cty. Bd. of Equal.*, 11 Neb. App. 171, 645 N.W.2d 821 (2002). Such a burden is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the taxpayer's property, when compared with valuations placed on other similar properties, is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain legal duty, and not mere errors of judgment. *Id*.

When examining comparable property for sales comparisons, the Nebraska Supreme Court stated that a comparable real property is one that is similar to the property being assessed in significant physical, functional, and location characteristics and in its contribution to value. *County of Webster v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 751, 896 N.W.2d 887 (2017). Appellate courts have affirmed a TERC finding that properties were not similar when the record supports such a determination. See *Bottorf v. Clay Cty. Bd. of Equal.*, 7 Neb. App. 162, 580 N.W.2d 561 (1998) (TERC's determination that properties were not similar due to style, quality, and size of properties was not arbitrary and capricious). See, also, *72nd Property, L.L.C. v. Douglas Cty. Bd. of Equal.*, 10 Neb. App. 826, 638 N.W.2d 872 (2002) (TERC's determination that properties were not similar in light of location, improvements, age, and size of properties was supported by competent evidence). To set the valuation of similarly situated property, i.e., comparables, at materially different levels, i.e., value per square foot, is by definition unreasonable and arbitrary. *Zabawa v. Douglas Cty. Bd. of Equal.*, 17 Neb. App. 221, 757 N.W.2d 522 (2008).

Here, TERC found that the Subject Property was not similar to the Comparable Property, and thus, denied Millard Lumber's appeal. In its order, TERC stated that the improvements were not similar because the Comparable Property was larger than the Subject Property, and that the Subject Property had a better condition rating, more area protected by fire sprinklers, more area of heavy duty concrete paving, and a more efficient heating system than the Comparable Property.

Based on our review of the record, we find that TERC's determination that the two properties were not similar, and therefore, should not have been equalized, is supported by competent evidence and was not arbitrary or capricious. First, the Douglas County assessor rated the Subject Property in average condition and average quality, whereas the Comparable Property was rated in fair condition and average quality. Additionally, the record indicates that the Subject Property has 80,000 square feet of heavy duty concrete paving and 35 foot ceilings, whereas the Comparable Property has only 50,000 square feet of heavy duty concrete paving and 30 foot ceilings.

Additionally, the Subject Property has 602,753 square feet of sprinkler coverage, which is more than the Comparable Property's sprinkler coverage of 569,000 square feet, despite being over 350,000 square feet larger. The evidence also demonstrates that the Subject Property has a more efficient heating system than the Comparable Property does. Finally, the classification of the two properties is different. The Subject Property is classified as a distribution warehouse, while the Comparable Property is classified as a storage warehouse.

Thus, in sum, the smaller Subject Property has more improvements to the property, such as more fire sprinkler coverage, heavy duty concrete paving, and higher ceilings, than does the larger Comparable Property. Therefore, as was the case in both *Bottorf v. Clay Cty. Bd. of Equal., supra*, and *72nd Property, L.L.C. v. Douglas Cty. Bd. of Equal., supra*, the quality, improvements, and size difference between the two properties render the Subject Property different from the Comparable Property.

Millard Lumber asserts that the two properties are similar because: they were constructed in the same year, they were part of the same industrial complex, they are comprised of the same building materials, are adjacent to each other, are of average quality, and are utilized for the same purposes. However, Millard Lumber bases its assertion on the testimony of Reeder, who was not an appraiser, but rather, was familiar with both properties due to his work as a contractor. Therefore, Reeder was offering only his opinion that the buildings were similar. A mere difference of opinion that the buildings were similar is not sufficient to establish that TERC erred in finding the properties were not similar. *Omaha Country Club v. Douglas Cty. Bd. of Equal., supra.* The Board was able to identify numerous differences between the properties with Reeder on cross-examination. These differences led TERC to determine that the two properties were not similar and Millard Lumber failed to carry its burden to clearly and convincingly demonstrate that the properties were similar.

Further, Millard Lumber alleges that TERC applied the wrong standard by stating that the improvements to the properties were not "substantially similar." Brief for appellant at 10. Millard Lumber correctly states that the standard for equalization is that properties must be similar. However, TERC appropriately laid out the rule for equalization in its order referencing "similar property" and "similarly situated property." It recognized the similarities and the differences

between the two properties in its analysis of the evidence. In light of the differences between the two properties that TERC identified in its order, its statement that there was "not clear and convincing evidence that these improvements are substantially similar for purposes of an equalization analysis" does not require reversal. Contrary to Millard Lumber's assertion, the term "substantially" does not necessarily imply a heightened standard. Rather, it is defined to mean either "to a large degree" or "generally." See Cambridge Advanced Learner's Dictionary and Thesaurus (2019). Millard Lumber does not direct us to any evidence to support a finding that TERC required the properties to be anything other than similar, and we likewise find none. Therefore, we find that TERC applied the proper standard for equalization between two properties.

Upon our review of the record, we find that TERC's determination that the Subject Property was not similar to the Comparable Property for equalization was supported by competent evidence and was not arbitrary and capricious. Accordingly, we find no error in TERC's order affirming the Board's decision to deny Millard Lumber's protest of its 2017 tax assessment. Further, because we affirm TERC's determination that the Subject Property is not similar to the Comparable Property, we do not address Millard Lumber's argument that its tax valuation was grossly excessive compared to the Comparable Property.

## CONCLUSION

We conclude that Millard Lumber failed to prove by clear and convincing evidence that the Subject Property was similar to the Comparable Property for equalization. We affirm TERC's decision.

AFFIRMED.