Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/03/2018 09:09 AM CDT

BETTY L. GREEN LIVING TRUST AND RICHARD R. GREEN
LIVING TRUST, APPELLANTS, v. MORRILL COUNTY
BOARD OF EQUALIZATION, APPELLEE.

___ N.W.2d ___

Filed May 11, 2018.    No. S-17-873.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Taxation: Appeal and Error.** Questions of law arising during appellate review of the Tax Equalization and Review Commission's decisions are reviewed de novo on the record.

4. **Administrative Law: Judgments.** Whether an agency decision conforms to the law is by definition a question of law.

5. **Administrative Law: Judgments: Words and Phrases.** Agency action is arbitrary, capricious, and unreasonable if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.

6. **Taxation: Valuation: Presumptions: Evidence.** A presumption exists that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented.

7. **Taxation: Valuation: Proof: Appeal and Error.** The burden of showing a valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board of equalization.

- 934 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

8. **Taxation: Valuation: Proof.** The burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment.

9. **Taxation: Valuation: Witnesses.** A resident owner who is familiar with his or her property and knows its worth is permitted to testify as to its value without further foundation. This principle rests upon the owner's familiarity with the property's characteristics, its actual and potential uses, and the owner's experience in dealing with it.

Appeal from the Tax Equalization and Review Commission. Affirmed.

Timothy L. Moll and Anthony M. Aerts, of Rembolt Ludtke, L.L.P., for appellants.

Travis R. Rodak, Morrill County Attorney, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Colborn and Samson, District Judges.

Miller-Lerman, J.

## NATURE OF CASE

This appeal involves the valuations of certain grassland properties owned by the Betty L. Green Living Trust and the Richard R. Green Living Trust (the Trusts). The Trusts appeal from the July 18, 2017, order of the Tax Equalization and Review Commission (TERC) which affirmed the valuations which had been established by the Morrill County assessor and were approved by the Morrill County Board of Equalization (the Board). We affirm TERC's order.

## STATEMENT OF FACTS

Between them, the Trusts own five grassland parcels of agricultural and horticultural land located in Morrill County, Nebraska, the assessed valuations of which for tax year 2016 were the subject of protests. In its order, TERC dismissed

- 935 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

the case involving a sixth property for lack of jurisdiction. The Trusts do not challenge that part of the decision, and therefore, we discuss only the five parcels that are at issue in this appeal.

For tax year 2016, the assessor determined the assessed valuations of the five properties to be $144,025, $106,260, $166,080, $157,410, and $186,470, for a total of $760,245. The Trusts protested the assessments to the Board and requested assessed valuations of $100,249, $41,824, $132,076, $91,627, and $78,966, respectively, for a total of $444,742. The Board accepted the assessor's valuations and denied the protests. The Trusts appealed to TERC.

As they argued to the Board and to TERC, the Trusts assert in this appeal that the assessor used a method of valuation that was flawed when applied to grassland properties such as the properties at issue in this case. TERC noted in its order that valuation of agricultural and horticultural land is governed by, inter alia, chapter 77, article 13, of the Nebraska Revised Statutes and the regulations adopted thereunder by the Property Tax Administrator and the Nebraska Department of Revenue's property assessment division (PAD). TERC found Neb. Rev. Stat. § 77-1363 (Cum. Supp. 2016) to be relevant to this case. Section 77-1363 provides as follows:

Agricultural land and horticultural land shall be divided into classes and subclasses of real property under section 77-103.01, including, but not limited to, irrigated cropland, dryland cropland, grassland, wasteland, nurseries, feedlots, and orchards, so that the categories reflect uses appropriate for the valuation of such land according to law. Classes shall be inventoried by subclasses of real property based on soil classification standards developed by the Natural Resources Conservation Service of the United States Department of Agriculture as converted into land capability groups by the Property Tax Administrator. County assessors shall utilize soil surveys from the Natural Resources Conservation Service of the

- 936 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

United States Department of Agriculture as directed by
the Property Tax Administrator. Nothing in this section
shall be construed to limit the classes and subclasses
of real property that may be used by county assessors
or [TERC] to achieve more uniform and proportion-
ate valuations.

TERC described the law and regulations relevant to valua-
tion in this case as follows:

In Nebraska agricultural land and horticultural land
classes shall be inventoried by subclasses of real property
based on soil classification standards developed by the
Natural Resources Conservation Service (NRCS) of the
United States Department of Agriculture as converted
into land capability groups (LCG) by the Property Tax
Administrator. County assessors are required to utilize
these LCGs as directed by the Property Tax Administrator.
The Property Tax Administrator and the Nebraska
Department of Revenue's [PAD] has adopted and prom-
ulgated Rules and Regulations to carry out their duties
pertaining to the classification of agricultural and horti-
cultural land by LCGs. These rules and regulations state
that the conversion legend for all LCGs is prepared by the
PAD according to the dryland capability classification of
each soil that shows, in a general way, the suitability of
each soil for most kinds of field crops. This conversion
legend shows the LCGs for each soil in a county whether
in grassland, dryland or irrigated cropland.

PAD's regulations require county assessors to inven-
tory and categorize each parcel of agricultural land using
the following classes: (1) irrigated cropland; (2) dryland
cropland; (3) grassland; and (4) wasteland. The county
assessor is then required to use a soil conversion legend
created by PAD to assign agricultural land to an appropri-
ate LCG.

For grassland the LGCs 1G1, 1G, 2G1, 2G, 3G1, 3G,
4G1, and 4G should generally progress from very high

- 937 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

yields of forage to very low yields of forage. In addition to the soil conversion legend, the regulations provide LCG definitions and guidelines for use by county assessors for purposes of assessing agricultural and horticultural land. The regulations also permit county assessors to develop additional LCG sub-classifications if needed to achieve uniform and proportionate valuation.

Much of the case that the Trusts presented to TERC was based on testimony and exhibits provided by Gerald W. Green, who is the trustee of the Trusts. Green testified regarding his experience and study in the area of agricultural land valuation. Through Green, the Trusts presented evidence to TERC which purported to show that the land capability groups (LCG) assignments determined by the PAD for grassland soil types present in Morrill County, when compared to Natural Resources Conservation Service range production ratings, did not progress from very high yields of forage to very low yields of forage. In other words, the Trusts argued that grassland soil types assigned to the 1G1 classification should have the highest yields of forage while those assigned to the 4G classification should have the lowest yields of forage. The evidence presented through Green purported to show that this expectation was not the case and that instead, a full range of yields of forage was present in each LCG classification and some soils classified as 4G had higher yields of forage than some soils classified as 1G. Green opined that the LCG assignments were random, arbitrary, and virtually meaningless and that therefore, the LCG's established by the PAD for grassland classifications did not meet the requirements of the applicable regulations and did not result in assessments that were uniform and proportionate.

Green proposed an alternate valuation methodology that did not use the LCG's determined by the Property Tax Administrator and instead categorized grassland properties by the Natural Resources Conservation Service range production rating. Valuations would be determined by using comparable

- 938 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

sales in Morrill County and nearby counties and making "a determination of what buyers are paying for livestock carrying capacity or in other words, $/AUM (Animal Unit Month)." Such "$/AUM" could then be "applied to all grassland parcels to come up with a valuation that is based on the current market conditions and the individual parcel's productivity." The Trusts calculated their requested valuations for the subject properties by determining a dollar value per animal unit month (AUM) based on sales of other grassland properties in Morrill County and then applying that dollar value per AUM to AUM's for the subject properties. This process resulted in the requested assessed valuations noted above.

In its order of July 18, 2017, TERC acknowledged the Trusts' evidence and stated that "[t]he LCG assignments for each grassland soil type according to the Rules and Regulations of the Department of Revenue for grassland in Morrill County appear to be flawed when looking at the [Natural Resources Conservation Service] production ratings for each soil type compared to its assigned LCG." In its order, TERC nevertheless found that while the Trusts showed potential flaws in the LCG assignments for grasslands, they "failed to demonstrate that this flaw has resulted in assessed value determinations in Morrill County that are incorrect or grossly excessive and the result of systematic will or failure of a plain legal duty." In reaching this determination, TERC noted the assessor had testified that she valued the Trusts' properties "in the same way that she valued all agricultural and horticultural property in Morrill County, and that this valuation followed the requirements of law imposed upon her." The assessor "looked at all sales, not just sales containing only grassland, to determine the assessed values for agricultural and horticultural land values in all classes, irrigated, dryland and grassland." With respect to the specific properties at issue in this case, the court described the assessor's procedure, relating that "there were no sales of properties with the same soil types as those on the [Trusts' properties] so she utilized her training and experience

- 939 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

along with the sales information pertaining to similar rough rocky ridge areas to determine the assessed values for" the Trusts' properties. The assessor, the court wrote, had noted in this regard that sales of such "rough rocky ridge areas in and around Morrill County were influenced by factors other than productivity alone."

As compared to the assessor's approach, TERC emphasized that the valuation methodology urged by the Trusts "focused on a single factor, production of forage, as the basis for [the] entire analysis, alleging that no other factors apply to grassland values in Morrill County." TERC noted that the assessor "testified that she had no market information to indicate that a reclassification of grassland soil types from the flawed LCG's . . . was warranted when determining assessed values for Morrill County." TERC noted that although the assessor acknowledged that production capability was one factor to be considered when valuing grassland, the assessor also "testified that the sales she utilized indicated that there were other factors at work in the market beyond production of forage alone," and that she "determined the assessed values for grassland in Morrill County based on all of the evidence before her," which included both the concerns presented by the Trusts as well as the legal requirements imposed on her in making assessments.

Taking all this into consideration, TERC found that

while the [Trusts have] demonstrated that there are flaws in the LCGs classified as grassland determined by the PAD, the [Trusts have] failed to demonstrate that this flaw has resulted in assessed value determinations in Morrill County that are incorrect or grossly excessive and the result of systematic will or failure of a plain legal duty.

TERC further found that the Trusts did not establish by clear and convincing evidence that the valuations placed on their properties, when compared to valuations placed on similar property, were grossly excessive and the result of systematic

- 940 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

will or failure of a plain legal duty and not mere error of judgment.

TERC concluded that there was "not competent evidence to rebut the presumption that the . . . Board faithfully performed its duties and had sufficient competent evidence to make its determination." TERC further concluded that there was "not clear and convincing evidence that the . . . Board's decision was arbitrary or unreasonable." TERC therefore denied the Trusts' appeals and affirmed the valuations determined by the Board.

The Trusts appeal TERC's order.

ASSIGNMENTS OF ERROR

The Trusts claim, restated and renumbered, that TERC erred when it (1) improperly applied the standard of review, (2) concluded that they failed to rebut the presumption of correctness as to the Board's determinations, and (3) found that the Board's valuations were not arbitrary, capricious, and unreasonable.

STANDARDS OF REVIEW

[1,2] Appellate courts review decisions rendered by TERC for errors appearing on the record. *Platte River Crane Trust v. Hall Cty. Bd. of Equal.*, 298 Neb. 970, 906 N.W.2d 646 (2018). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

[3,4] Questions of law arising during appellate review of TERC's decisions are reviewed de novo on the record. *County of Webster v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 751, 896 N.W.2d 887 (2017). Whether an agency decision conforms to the law is by definition a question of law. *Id.*

[5] Agency action is arbitrary, capricious, and unreasonable if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion. *County of Douglas*

- 941 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

*v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 501, 894 N.W.2d 308 (2017).

## ANALYSIS

The Trusts generally claim that TERC erred when it affirmed the Board's decision accepting the assessor's valuations of their properties for the 2016 tax year. The Trusts specifically argue that TERC misapplied the standard of review, that TERC erred when it found that the Trusts did not rebut the presumption of correctness of the Board's decision, and that TERC erred when it failed to find the Board's decision to be arbitrary, capricious, and unreasonable. We reject these assignments of error and affirm TERC's order.

*Standards of Review.*

With regard to the standard of review that TERC is to use when reviewing decisions of county boards of equalization, Neb. Rev. Stat. § 77-5016(9) (Cum. Supp. 2016) provides as follows:

> In all appeals, excepting those arising under section 77-1606, if the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, [TERC] shall deny the appeal. If the appellant presents any evidence to show that the order, decision, determination, or action appealed from is incorrect, such order, decision, determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.

[6-8] We have held that the language of § 77-5016(9) creates a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, 285 Neb. 120, 825 N.W.2d 447 (2013). That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence

adduced on appeal to the contrary. *Id*. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. *Id*. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board. *Id*. We have further stated that the burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment. *Id*. The burden of persuasion always remains with the taxpayer. See *id.*

The Trusts assert that TERC misapplied the foregoing standards in this case. They argue that TERC erred when it found the Trusts failed to rebut the presumption of validity afforded by § 77-5016(9) to the Board and that it compounded the error by applying a presumption in favor of the Board when it found that the Board's valuation of their property was not arbitrary, capricious, and unreasonable.

We believe that although TERC's order as written lends itself to confusion, TERC did not err in its application of the correct standards of review. The confusion appears to result from the fact that TERC both concluded that there was "not competent evidence to rebut the presumption that the . . . Board faithfully performed its duties and had sufficient competent evidence to make its determination" and also stated that there was "not clear and convincing evidence that the . . . Board's decision was arbitrary or unreasonable." From these and other statements in the order, the Trusts contend that TERC improperly applied a presumption of reasonableness to the Board's valuations. We reject the Trusts' assignment of error claiming that TERC applied an incorrect standard of review.

It is well settled that TERC's threshold determination should be whether the taxpayer presented competent evidence to rebut

- 943 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

the presumption in favor of the Board. *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008); *US Ecology v. Boyd Cty. Bd. of Equal.*, 256 Neb. 7, 588 N.W.2d 575 (1999). TERC's determination of that question may often be informed by considering whether the taxpayer has presented evidence that would call into question whether the valuation adopted by the Board is reasonable. That is, evidence tending to show that the valuation is questionable can serve toward rebutting the presumption that the Board faithfully performed its duties. And where a taxpayer overcomes the presumption of validity for the county's valuation, the reasonableness of the valuation fixed by the board of equalization becomes a question of fact based on all of the evidence presented. *JQH La Vista Conf. Ctr., supra*.

*The Evidence.*

With the foregoing explanation in mind, and as we discuss below, we read TERC's order in this case as having concluded that the Trusts did not present competent evidence to rebut the presumption. See § 77-5016(9). Having concluded that the Trusts did not rebut the presumption, TERC did not need to, nor did it, make a fact finding regarding the reasonableness of the Board's valuations. A fortiori, TERC did not apply an improper presumption relative to a hypothetical reasonableness determination.

Reading the order in this manner, we review TERC's decision for errors appearing on the record. Our inquiry is whether TERC's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *Platte River Crane Trust v. Hall Cty. Bd. of Equal.*, 298 Neb. 970, 906 N.W.2d 646 (2018). As discussed below, we conclude under this standard of review that TERC's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

The Trusts rely on *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, 285 Neb. 120, 825 N.W.2d 447 (2013), in support

of their argument that TERC erred when it concluded that they had failed to rebut the presumptions regarding the Board's determinations. In *JQH La Vista Conf. Ctr.*, we reviewed TERC's decision which had affirmed a board of equalization's valuations. We first determined that "TERC was incorrect when it concluded that the presumption of correctness was not overcome by competent evidence." *Id.* at 126, 825 N.W.2d at 452. Because we determined that the taxpayer in that case had rebutted the presumption, we then examined whether the taxpayer had shown by clear and convincing evidence that the board's valuation was unreasonable. Because we determined that the taxpayer "failed to meet its burden of showing that the county's valuation was unreasonable and arbitrary," we ultimately affirmed TERC's decision. *Id.* at 129, 825 N.W.2d at 454.

In reaching the initial conclusion in *JQH La Vista Conf. Ctr.* that the taxpayer had overcome the presumption of validity, we reasoned that the taxpayer had done so by presenting the appraisals of a certified appraiser who testified that the appraisals were prepared in conformity with uniform standards of appraisal practice. We noted that "[t]he appraisals provided three alternative valuations of the [subject property], using each of the three methods provided for by" Neb. Rev. Stat. § 77-112 (Reissue 2009). *JQH La Vista Conf. Ctr.*, 285 Neb. at 126, 825 N.W.2d at 453.

We note at this point that under Neb. Rev. Stat. § 77-201(1) (Cum. Supp. 2016), all real property, unless expressly exempt, is subject to taxation and is to be valued at its actual value. Agricultural and horticultural land is valued for taxation purposes at 75 percent of its value, but the starting point for determining taxable value is still actual value. Under § 77-112, which we cited in *JQH La Vista Conf. Ctr.*, "[a]ctual value . . . means the market value of real property in the ordinary course of trade." Section 77-112 provides, "Actual value may be determined using professionally accepted mass appraisal methods, including, but not limited to, the (1) sales

- 945 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

comparison approach using the guidelines in section 77-1371, (2) income approach, and (3) cost approach." Ultimately in *JQH La Vista Conf. Ctr.*, we concluded that the taxpayer had rebutted the presumption of correctness of the board's decision by presenting appraisals for the subject property, which appraisals were performed by a certified appraiser using approved methods.

In contrast to the evidence presented by taxpayers in *JQH La Vista Conf. Ctr.*, the Trusts in this case attempted to rebut the presumption of validity by presenting valuations of their properties that were determined using a method that was not shown to be a "professionally accepted mass appraisal method[]." See § 77-112. The Trusts did not present evidence of alternate valuations calculated using methods of valuation that were authorized under the relevant statutes and regulations, and as we discuss below, the method urged by the Trusts was not appropriate. That is, we believe the Trusts' evidence and methodology did not tend to show that the Board and the assessor failed to faithfully perform their duties or that they did not have sufficient competent evidence to make their determination of valuations in accordance with the law and regulations that govern the assessment process. The evidence in this case indicates instead that the Board and the assessor followed the relevant statutes and regulations to arrive at valuations for the Trusts' properties.

TERC acknowledged that the Trusts' evidence may have indicated a possible flaw in the methodology developed by the PAD to classify grassland properties, which methodology the assessor was required to employ. The assessor generally testified that she used the classifications required by the PAD and then valued the properties using a sales comparison approach based on such classifications. TERC determined that the evidence showed that the assessor and the Board followed the law imposed on them and valued the properties using a professionally accepted mass appraisal method. That is, TERC determined that the evidence did not indicate that the Board in this

- 946 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

case neither failed to faithfully perform its duties nor made its determinations based on incompetent evidence.

The Trusts' arguments were directed to flaws in the classifications promulgated by the PAD rather than to failures on the part of the assessor or the Board in applying the methods imposed on them by law. The Trusts argued in part that the assessor should have made additional subclassifications based on productivity of the soil for grassland purposes. However, the assessor generally testified that in applying a sales comparison approach, she compared the subject properties to sales of what she determined to be comparable properties based on various factors, including but not limited to productivity as grassland. In particular, she noted that the subject properties were characterized by areas of "rocky, rough ground" and that she compared the subject properties to other properties with similar rough, rocky features. TERC determined that the Trusts did not rebut the presumption of correctness, and in comparison, it noted that the Trusts' alternate methodology had focused on a single factor—productivity—rather than the multiple factors that the assessor considered in making sales comparisons.

The Trusts generally used sales comparisons to calculate a valuation per AUM, which they asserted to be the best measure of productivity for grassland purposes. The Trusts calculated a valuation per AUM for the comparison properties based on AUM for those properties and then calculated an alternate valuation for their properties by multiplying that "$/AUM" by AUM for their properties. The Trusts did not demonstrate or present evidence to show that this method was a recognized professionally accepted mass appraisal method in addition to those identified in § 77-112. The method appeared to be a modified sales comparison approach in which sales of other grasslands were considered but were adjusted based entirely on the single feature of productivity. As noted above, TERC rejected this approach because it focused on a single feature, as compared to the assessor's testimony that she

- 947 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
BETTY L. GREEN LIVING TRUST v. MORRILL CTY. BD. OF EQUAL.
Cite as 299 Neb. 933

considered various features of the properties to determine comparable sales.

We recognize that the Trusts' reliance on AUM as a measure of productivity for grasslands finds some support in the law governing property valuation. Under § 77-112, an income approach is specifically noted as an appropriate professionally accepted mass appraisal method, and the regulations set forth an income approach for valuing grasslands based on AUM in appropriate circumstances. See 350 Neb. Admin. Code, ch. 11, § 005.03 (rev. 2009). This income approach generally requires capitalizing net cash rents, and specifically "in the case of grassland use," net cash rents are to be determined as "cash rent per [AUM]." § 005.03A(3). However, in this case, the Trusts did not present evidence of cash rent per AUM and did not capitalize net cash rent in accordance with the income approach as set forth in this regulation. Instead, the Trusts used the modified sales comparison approach described above in which they adjusted valuations based on the sole factor of AUM. Given the law in this area, the valuations that resulted from the Trusts' approach were not competent evidence to rebut the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its determination.

[9] In connection with competent evidence, we note that the Trusts argue that TERC erred by rejecting Green's testimony which they assert was "competent evidence" to rebut the presumption of correctness. Brief for appellants at 17. They rely on cases in which we have said that a resident owner who is familiar with his or her property and knows its worth is permitted to testify as to its value without further foundation and that this principle rests upon the owner's familiarity with the property's characteristics, its actual and potential uses, and the owner's experience in dealing with it. See *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008). The Trusts argue that because an owner may so testify, Green's testimony in this case was competent evidence to

rebut the presumption in favor of the Board. However, these principles relate to admissibility and foundation requirements for a resident owner's testimony regarding the value of his or her property. And although this sort of testimony is admissible evidence, it does not automatically lead to the conclusion that such evidence constitutes competent evidence contrary to the presumption. That determination involves considering not only whether the taxpayer presented admissible evidence but specifically whether the substance of the evidence presented by the taxpayer was competent to rebut the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its determinations.

In this case, TERC did not dismiss Green's testimony out of hand. Instead, TERC allowed Green to testify regarding the value of the property, but after considering his testimony, TERC concluded that it did not serve to rebut the presumption. As discussed above, we conclude that TERC did not err when it determined that Green's testimony and other evidence presented by the Trusts did not rebut the presumption of validity regarding the Board's determinations.

## CONCLUSION

We conclude that TERC's decision—in which it concluded that the Trusts did not present competent evidence to rebut the presumption that the Board faithfully performed its duties and had sufficient competent evidence to make its determinations—conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. We therefore affirm TERC's order.

AFFIRMED.

WRIGHT, J., not participating.