Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/28/2020 09:06 AM CST

- 638 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

Wheatland Industries, LLC/Mid America Agri
Products, appellee, v. Perkins County
Board of Equalization, appellant.
___ N.W.2d ___

Filed December 6, 2019.    No. S-19-305.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Administrative Law: Judgments: Words and Phrases.** Agency action is arbitrary, capricious, and unreasonable if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.

4. **Taxation: Valuation: Presumptions: Evidence.** A presumption exists that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary.

5. ____: ____: ____: ____. Once the challenging party overcomes the presumption of validity by competent evidence, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all of the evidence presented.

6. **Taxation: Valuation: Proof: Appeal and Error.** The burden of showing a valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board of equalization.

7. **Taxation: Valuation: Proof.** The burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of

- 639 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

opinion unless it is established by clear and convincing evidence that the valuation placed upon the property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment.

Appeal from the Tax Equalization and Review Commission. Affirmed.

Richard H. Roberts, Perkins County Attorney, and Gary F. Burke for appellant.

Frederick D. Stehlik and Zachary W. Lutz-Priefert, of Gross & Welch, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

This review proceeding addresses the taxable valuation of commercial real estate used as an ethanol plant. The taxpayer unsuccessfully protested the county's $16.3 million valuation—a valuation based upon mass appraisal techniques—and then appealed to the Tax Equalization and Review Commission (TERC), which reduced the value to $7.3 million based upon the taxpayer's appraisal. Here, because the county's valuation relied upon admittedly incorrect information and lacked evidentiary support regarding applicable depreciation, the evidence showed more than a mere difference of opinion. Finding no error appearing on the record, we affirm TERC's ruling. But our decision should not be read to categorically reject mass appraisal as a proper valuation methodology for an ethanol plant.

## BACKGROUND

Wheatland Industries, LLC/Mid America Agri Products (Wheatland) owned an ethanol plant on commercial real estate in Madrid, Perkins County, Nebraska (Madrid property). The

Perkins County assessor, Peggy Burton, assessed the value of the Madrid property at $16,364,768 for the 2017 tax year.

Wheatland protested the assessment to the Perkins County Board of Equalization (Board). At the protest hearing, Wheatland did not present evidence. The Board affirmed Burton's valuation of the Madrid property.

Wheatland appealed to TERC. A hearing was held and both parties presented evidence. We first summarize the evidence regarding the county's assessment, then the evidence of the taxpayer's appraisal, and finally TERC's decision.

## COUNTY ASSESSMENT

For the county, Darrell Stanard conducted an appraisal of the Madrid property using the mass appraisal method. He had appraised five other ethanol plants in different counties using the mass appraisal approach. He agreed with the $16 million value of the Madrid property.

In order to aid the mass appraisal assessment, Burton prepared a spreadsheet of the values of all ethanol plants in Nebraska. She obtained the values directly from the other counties' assessors but she was unaware how those counties assessed their ethanol plants. She maintained that the $16 million value was the proper value for the Madrid property.

Wheatland elicited evidence about the value shown on Burton's spreadsheet for the Furnas County ethanol plant. Stanard agreed with Wheatland that the Furnas County plant's nameplate capacity shown on the spreadsheet was incorrect. Its nameplate capacity was actually 44 million gallons, not 22 million gallons as shown on the spreadsheet. He explained that the nameplate capacity is critical to determining the value of the plant. Before this court, the Board in effect concedes the error. And Burton agreed that if the spreadsheet contained incorrect information about the nameplate capacity of the Furnas County plant, it would change her opinion about the value of the Madrid property. But she did not quantify how her opinion would change.

- 641 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

Wheatland's appraiser, Joseph Calvanico, had valued the Furnas County plant twice. He stated that the Furnas County plant was "almost a mirror copy" of the Madrid property—both were constructed at the same time, used the same technology, and are about the same size. When appraising the Furnas County plant, he used the same methodology as he did for the Madrid plant. Wheatland's chief executive officer stated that he owned the Furnas County plant and that it was identical to the Madrid property, except there was 200 more acres of land for the Furnas County plant. The Furnas County plant was assessed at $8,943,575. Stanard agreed that if Calvanico was correct that the Furnas County plant was a "sister" plant to the Madrid property, he would have no disagreement with Calvanico's appraisal of the Madrid property.

## Wheatland Appraisal

At the time of TERC's hearing, Calvanico had been a real property appraiser for 35 years. Wheatland hired him to appraise the Madrid property. He testified that his appraisal conformed with the Uniform Standards of Professional Appraisal Practice.

Calvanico utilized the cost approach method to appraise the property. He stated that the income approach would not be useful, because the income stream associated with the property came from the separately assessed equipment rather than from the real estate. He opined that the sales comparison approach was useful to underscore the information from the cost approach. He explained that the sales comparison approach would not be effective as a stand-alone method of appraisal for the Madrid property, because most sales of ethanol plants were older and not from the area.

Calvanico explained his application of the cost approach method. He began by determining the value of the underlying land. He examined land sales of dry farmland and concluded that the price per acre was $1,600. He appraised the value of the underlying land at $277,000. He then appraised the

- 642 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

buildings and improvements on the land. He classified the buildings and improvements and used the Marshall Valuation Service to estimate the replacement cost. He estimated the base actual value of the buildings at $9,387,529 and improvements at $5,641,172.

He then discussed depreciation. He concluded that the physical depreciation of the buildings that were 10 years old would depreciate 20 to 22 percent, the structures built within the past few years would depreciate 4 to 6 percent, and the improvements would depreciate 25 percent.

Burton stated that when performing mass appraisal, she did not apply depreciation to any property and did not believe that depreciation was applied to the Madrid property. Stanard agreed that physical depreciation should be factored into the value of the Madrid property.

Calvanico discussed the functional depreciation attributed to the buildings. He stated that if the fermentation and main process buildings were put to an alternative use, those buildings would be the most difficult to repurpose, because their function is to house the equipment. He applied a 20-percent functional depreciation to those buildings. Stanard stated that functional depreciation should not be applied.

Calvanico discussed the economic depreciation attributed to the buildings and improvements. He examined the ethanol industry in Nebraska and nationwide. He discussed the decrease in the price per bushel of corn and the diminished number of ethanol plants in Nebraska. He emphasized that in 2011, there were 39 ethanol plants in Nebraska, and that at the time of appraisal, there were 26 ethanol plants. He articulated that this was a 40-percent decrease in the ethanol industry in Nebraska and concluded that the economic value of the Madrid property would depreciate 40 percent. Stanard agreed that "some" economic depreciation should be applied but did not quantify how much that should be.

Ultimately, Calvanico appraised the actual value of the Madrid property at $6.8 million.

- 643 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

## TERC's Decision

TERC found that because Calvanico performed the appraisal according to professionally approved standards, his appraisal report was competent evidence sufficient to rebut the presumption in favor of the Board's determination.

TERC then found that, for two reasons, it was unreasonable and arbitrary for the Board to rely upon Burton and Stanard's valuation. First, TERC agreed with Burton, Stanard, and Calvanico that physical depreciation should be applied to the Madrid property. It characterized Burton's and Stanard's testimony as to whether physical depreciation had been applied as "inconsistent," and it determined that they had provided no evidence of the amount of physical depreciation. Second, TERC pointed to the incorrect information Burton's spreadsheet contained and the absence of a revised opinion based upon the correct information.

TERC then discussed Calvanico's appraisal and focused on his analysis of depreciation. First, TERC agreed with Calvanico's assessment of physical depreciation. Second, it reasoned that the Madrid property was still operating as an ethanol plant with the "Delta-T technology" at the time of the assessment and that therefore, it did not suffer from functional depreciation. Finally, it agreed that

> due to the state of the ethanol industry, including a reduction in the price per gallon paid for ethanol, a reduction if not contraction of the rate of ethanol plant construction and other factors the depreciation to be applied to the [Madrid property] for economic obsolescence should be 40 [percent].

Except regarding functional depreciation, TERC found Calvanico's appraisal persuasive and assessed the value of the Madrid property for 2017 at $7,336,042.

The Board timely petitioned for review of TERC's decision.[1] We moved the review proceeding to our docket.[2]

---

[1] See Neb. Rev. Stat. § 77-5019(2)(a)(i) (Reissue 2018).

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

- 644 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

## ASSIGNMENTS OF ERROR

The Board assigns that (1) there was insufficient evidence for TERC to find that the Board's determination was unreasonable and arbitrary, (2) TERC erred when it allowed a 40-percent economic depreciation, and (3) it erred when it found the value of the Madrid property to be $7,336,042.

## STANDARD OF REVIEW

[1-3] Appellate courts review decisions rendered by TERC for errors appearing on the record.[3] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4] Agency action is arbitrary, capricious, and unreasonable if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.[5]

## ANALYSIS

[4] We begin by noting that the presumption of validity does not apply at this stage. A presumption exists that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary.[6] Neither party disputes that Wheatland presented competent evidence through Calvanico's appraisal and thereby overcame the presumption of validity of the Board's valuation.

---

[3] *Betty L. Green Living Trust v. Morrill Cty. Bd. of Equal.*, 299 Neb. 933, 911 N.W.2d 551 (2018).

[4] *Id.*

[5] *Id.*

[6] *Id.*

- 645 -

Nebraska Supreme Court Advance Sheets
304 Nebraska Reports
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

[5-7] This leads to the principles governing TERC's decision. Once the challenging party overcomes the presumption of validity by competent evidence, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all of the evidence presented.[7] That applies here. The burden of showing a valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board of equalization.[8] The burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment.[9]

The Board makes three arguments that there was insufficient evidence to support TERC's determination. First, it argues that once the presumption of the Board was rebutted, there was sufficient evidence to support that the Board's valuation of the Madrid property, when compared to a similar property, was not grossly excessive. Second, it argues that there was insufficient evidence to support the 40-percent economic depreciation, because the Madrid property had been profitable and the ethanol plant numbers Calvanico relied upon were proposed plants not completed plants. Third, it argues that if we determine the economic depreciation percentage was incorrect, then we should value the Madrid property without economic depreciation or remand the matter to TERC with instruction to determine the correct amount of economic depreciation, if any.

Wheatland presented evidence of the Furnas County plant as a comparable property. Calvanico stated that he had appraised

---

[7] See *id*.

[8] *Id.*

[9] *Id.*

- 646 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
304 NEBRASKA REPORTS
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

the Furnas County plant twice and that it was nearly identical to the Madrid property in blueprint, technology, and capacity. He referred to the Furnas County plant as a "sister" plant. Wheatland owned the Furnas County plant, and its chief executive officer affirmed that they were identical.

Stanard explained that Burton's spreadsheet contained incorrect information about the Furnas County plant. The Furnas County plant was not a 22-million-gallon plant, but, rather, it was a 44-million-gallon plant. This affirmed Wheatland's evidence that the plants were identical in capacity. Stanard's statement—that the nameplate capacity of a plant was critical to determining its value—emphasized the importance of the relationship in value between the Furnas County plant and the Madrid property. Although Burton did not state how her opinion of the Madrid property value would change from the incorrect spreadsheet, she did not dispute the $8.9 million value of the Furnas County plant. Stanard did state that if the Furnas County plant was a "sister" plant, he would have no disagreement with Calvanico's appraisal of the Madrid property. Clearly, the evidence presented showed that the Furnas County plant was a "sister" plant. Calvanico's opinion purported to show that the Board had overvalued the Madrid property by well over $6 million—hardly a mere difference of opinion. Stanard's acceptance of Calvanico's appraisal undermines the Board's argument attempting to characterize it as such.

As part of Wheatland's evidence intended to show a grossly excessive value, it focused on the failure to apply depreciation. Burton, Stanard, and Calvanico all agreed that physical depreciation should be applied to the Madrid property. Burton and Stanard were unaware if physical depreciation was applied, and there was no evidence that it was. Additionally, Stanard agreed with Calvanico that "some" economic depreciation should be applied to the Madrid property but the Board did not present evidence as to an appropriate amount. This evidence showed that the Board's valuation was unreliable, because it failed to

- 647 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
304 NEBRASKA REPORTS
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

take into account any depreciation, which in turn resulted in an excessively high valuation.

Because the evidence showed that the Furnas County plant was comparable and that the Board's valuation was unreliable, there was competent evidence to show that the Board's valuation was grossly excessive. Accordingly, TERC's determination that it was arbitrary and unreasonable to rely on the Board's determination of value was supported by competent evidence and was not arbitrary, capricious, or unreasonable.

The Board argues that there was insufficient evidence to support economic depreciation of 40 percent. "Based upon the applicable law, the Board need not put on any evidence to support its valuation of the property at issue unless the taxpayer establishes the Board's valuation was unreasonable or arbitrary."[10] Because Wheatland established that the Board's valuation was unreasonable and arbitrary, TERC did not err in relying upon Calvanico's appraisal.

"Economic depreciation results from external economic forces which depress the value of the property."[11] Calvanico observed the state of the ethanol industry, the decrease in the price per gallon of ethanol, and the reduction of the rate of ethanol plant construction. He emphasized that Nebraska had 39 ethanol plants in 2010 and 26 ethanol plants in 2017. From his observations, he opined that economic depreciation of 40 percent was appropriate.

We cannot say that TERC's reliance on Calvanico's opinion was arbitrary, capricious, or unreasonable. Stanard asserted that the numbers that Calvanico relied upon were not all constructed and operational ethanol plants—that is, some were proposed plants that never came to fruition. But he did not expound why proposed plants versus operational plants makes a difference

---

[10] *Bottorf v. Clay Cty. Bd. of Equal.*, 7 Neb. App. 162, 168, 580 N.W.2d 561, 566 (1998).

[11] *First Nat. Bank v. Otoe Cty.*, 233 Neb. 412, 414, 445 N.W.2d 880, 882 (1989).

- 648 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
304 NEBRASKA REPORTS
WHEATLAND INDUS. v. PERKINS CTY. BD. OF EQUAL.
Cite as 304 Neb. 638

to the state of the Nebraska ethanol industry or how it would affect economic depreciation. Moreover, Stanard admitted that "some" economic depreciation was appropriate, but failed to quantify his opinion. TERC was left with the choice between "some" and 40 percent. Further, the Board failed to present evidence as to how the profitability of the ethanol plant would affect economic depreciation of the property and quantify that amount. Accordingly, TERC's determination of economic depreciation was based on competent evidence and was not arbitrary, capricious, or unreasonable.

## CONCLUSION

We reiterate that our decision does not mean that mass appraisal valuation techniques do not apply to ethanol plants. Here, because evidence was presented to show that a similar property was valued comparably to Wheatland's appraisal and the Board's valuation was unreliable, we conclude that TERC's determination that the Board's valuation was unreasonable and arbitrary was supported by competent evidence and was not arbitrary, capricious, or unreasonable. Additionally, we conclude that TERC's determination of economic depreciation was supported by competent evidence and was not arbitrary, capricious, or unreasonable. We affirm its decision.

AFFIRMED.