Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/08/2024 09:15 AM CST

Inland Insurance Company, appellant and
cross-appellee, v. Lancaster County Board of
Equalization, appellee and cross-appellant.

___ N.W.3d ___

Filed March 8, 2024.    No. S-23-289.

1. **Taxation: Judgments: Appeal and Error.** Appellate review of a decision from the Tax Equalization and Review Commission shall be conducted for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. ____: ____. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.
4. **Statutes.** Statutory language is to be given its plain and ordinary meaning.
5. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.
6. **Statutes: Intent: Appeal and Error.** When interpreting a statute, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. An appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.

Appeal from the Tax Equalization and Review Commission. Reversed and remanded for further proceedings.

Shannon L. Doering and Luke F. Vavricek for appellant.

Daniel J. Zieg, Chief Deputy Lancaster County Attorney, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Inland Insurance Company (Inland) appeals from the decision of the Tax Equalization and Review Commission (TERC) upholding the decision of the Lancaster County Board of Equalization (Board of Equalization) declining to lower the assessed value of real property owned by Inland. At issue on appeal is whether a fire caused by arson is a calamity for purposes of Neb. Rev. Stat. § 77-1307(2)(a) (Cum. Supp. 2022). We conclude that it is and reverse TERC's decision and remand the cause for further proceedings.

## BACKGROUND

Inland owned real property located at 610 S. 12th Street in Lincoln, Nebraska. As of January 1, 2020, the Lancaster County assessor had valued this real property at $793,800. On or about May 30 or 31, the property was damaged by fire caused by arson. Inland then filed a report of destroyed real property with the county assessor's and county clerk's offices in Lancaster County. The Board of Equalization considered the report but left the value of the property as assigned as of January 1. Inland appealed to TERC.

TERC held a hearing in Inland's case, after which TERC concluded that the property was not "destroyed real property"[1] because the fire that had destroyed the property was not a "calamity" as defined by § 77-1307(2)(a). Inland appeals, and the Board of Equalization cross-appeals.

---

[1] Neb. Rev. Stat. § 77-1308 (Cum. Supp. 2022).

- 145 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
INLAND INS. CO. v. LANCASTER CTY. BD. OF EQUAL.
Cite as 316 Neb. 143

## ASSIGNMENTS OF ERROR

On appeal, Inland assigns that TERC erred in (1) "sanctioning" the Board of Equalization's "unlawful error of requiring Inland to rebut a presumption that the [Board of Equalization] faithfully performed its duties and then to meet a heightened burden of proof after the Report was filed and imposing this heightened standard upon Inland in derogation of the statutorily prescribed process due to Inland," (2) determining that the word "calamity" did not include a "'fire'" caused by arson, (3) finding there was not competent evidence to rebut the presumption that the Board of Equalization faithfully performed its duties and had sufficient competent evidence to make its determination, (4) finding that there was not clear and convincing evidence to make its determination, and (5) interpreting § 77-1307 in such a manner as to create unconstitutional subclassifications of taxpayers that violate the Equal Protection Clauses of the U.S. and Nebraska Constitutions.

On cross-appeal, the Board of Equalization asserts in a separate cross-appeal (although it does not assign) that portions of Neb. Rev. Stat. § 77-1301 (Cum. Supp. 2022), as well as §§ 77-1307 and 77-1308 and Neb. Rev. Stat. § 77-1309 (Cum. Supp. 2022), were unconstitutional.

## STANDARD OF REVIEW

[1-3] Appellate review of a decision from TERC shall be conducted for error appearing on the record.[2] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3] However, in instances when an appellate court is required to review cases for error appearing

---

[2] See Neb. Rev. Stat. § 77-5019(5) (Reissue 2018).

[3] *Wheatland Indus. v. Perkins Cty. Bd. of Equal.*, 304 Neb. 638, 644, 935 N.W.2d 764 (2019).

- 146 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
INLAND INS. CO. v. LANCASTER CTY. BD. OF EQUAL.
Cite as 316 Neb. 143

on the record, questions of law are nonetheless reviewed de novo on the record.[4]

## ANALYSIS

On appeal, Inland argues that TERC erred in various ways when it upheld the Board of Equalization's refusal to lower the assessed value of its real property. Inland first argues that the Board of Equalization failed to utilize the procedures set forth by statutes for lowering the assessed value on such property—in that Inland need only submit the appropriate request to the Board of Equalization, which was then obligated to lower its assessment. According to Inland, if the Board of Equalization believed that lower assessment to be incorrect, it was then the responsibility of the Lancaster County assessor to protest the valuation. Inland also argues that the property in question was "destroyed property," which decreased valuation was caused by a "'calamity'"—in this case, a fire caused by arson—and that TERC erred in various ways when finding to the contrary.[5]

Meanwhile, the Board of Equalization has cross-appealed and alleges that a portion of § 77-1301 and all of §§ 77-1307 to 77-1309 were unconstitutional as violative of the uniformity clause of Neb. Const. art. VIII, § 1.

### Board of Equalization's Procedure.

We turn first to Inland's contention that the Board of Equalization followed an incorrect procedure when denying its request for a reduced valuation in its report of destroyed real property. Inland suggests that its due process rights were violated and that the procedure set forth by the statutes was not followed when the Board of Equalization considered and then denied Inland's request for a downward valuation of

---

[4] *Centurion Stone of Neb. v. Whelan*, 286 Neb. 150, 152, 835 N.W.2d 62 (2013).

[5] See brief for appellant at 25.

- 147 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
INLAND INS. CO. v. LANCASTER CTY. BD. OF EQUAL.
Cite as 316 Neb. 143

Inland's property. Inland contends that the governing statutes require the Board of Equalization to lower the value of the property as requested by the landowner and that if the County or the Board of Equalization disagreed with the new valuation, the county assessor could protest that valuation. We find this contention regarding the procedure to be followed without merit.

Section 77-1308 provides:

(1) If real property becomes destroyed real property during the current assessment year, the property owner shall file a report of the destroyed real property with the county assessor and county clerk of the county in which the property is located on or before July 15 of the current assessment year. The report of destroyed real property shall be made on a form prescribed by the Tax Commissioner.

. . . .

(3) The county board of equalization shall consider any report of destroyed real property received pursuant to this section, and the assessment of such property shall be made by the county board of equalization in accordance with section 77-1309. After county board of equalization action pursuant to section 77-1309, the county assessor shall correct the current year's assessment roll as provided in section 77-1613.02.

And § 77-1309(1) states that "[i]f the county board of equalization receives a report of destroyed real property pursuant to section 77-1308, the county board of equalization shall adjust the assessed value of the destroyed real property to its assessed value on the date it suffers significant property damage."

When read together, Inland argues that the requirement in § 77-1309 that upon receipt of a report of destroyed real property pursuant to § 77-1308, a board of equalization has no discretion but *shall* adjust the assessed value of the destroyed real property.

- 148 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
INLAND INS. CO. v. LANCASTER CTY. BD. OF EQUAL.
Cite as 316 Neb. 143

But Inland's argument overlooks a separate subpart of § 77-1308. Section 77-1308(3) requires that a board of equalization "shall *consider* any report of destroyed real property . . . and the assessment of such property shall be made by the county board of equalization." That a board of equalization would be required to accept, without consideration, the position of a property owner that its property had been destroyed by a calamity, and further accept a revised value of the property as binding, is contrary to those statutory provisions governing the assessment of real property, which provide that the county board of equalization sets the value of real property.[6] We find no merit to Inland's contention on appeal.

*Destroyed Real Property Damaged by Calamity.*

We turn next to Inland's assertion on appeal that its property was destroyed real property damaged by a calamity within the meaning of the statute. We find merit to this argument.

The relevant statutes are found at §§ 77-1307 to 77-1309. Section 77-1307 states in part:

(1) The Legislature finds and declares that fires, earthquakes, floods, and tornadoes occur with enough frequency in this state that provision should be made to grant property tax relief to owners of real property adversely affected by such events.

(2) For purposes of sections 77-1307 to 77-1309:

(a) Calamity means a disastrous event, including, but not limited to, a fire, an earthquake, a flood, a tornado, or other natural event which significantly affects the assessed value of real property;

(b) Destroyed real property means real property that suffers significant property damage as a result of a calamity occurring on or after January 1, 2019, and before July 1 of the current assessment year. Destroyed real property does not include property suffering significant property damage that is caused by the owner of the property[.]

---

[6] See, e.g., Neb. Rev. Stat. § 77-1502 (Cum. Supp. 2022).

In sum, the definition of "destroyed real property" requires that the property be destroyed or diminished in value due to a calamity. And a "calamity" includes a fire, earthquake, flood, tornado, or other natural disaster.

[4-6] Statutory language is to be given its plain and ordinary meaning.[7] An appellate court will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.[8] When interpreting a statute, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.[9] An appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.[10]

The central dispute decided by TERC was whether a fire started by arson was a "calamity" under § 77-1307(2)(a). TERC concluded that it was not. On appeal, Inland argues that this was error, and based upon our reading of the statute, and in considering the entirety of the relevant statutes, we agree.

In defining "calamity," § 77-1307(2)(a) explains by its plain terms that a "calamity" is, first and foremost, a "disastrous event." The definition of "disastrous event" includes some natural events, but by the plain language of § 77-1307(2)(a), it is "not limited" to natural events. Although § 77-1307(1) notes that the Legislature "finds and declares" that fires, earthquakes, floods, and tornadoes occur with frequency in Nebraska, this recognition does not limit disastrous events to only these "events."

TERC interpreted the listed events provided in § 77-1307(2)(a) and concluded that the phrase "other natural event[s]" must mean that all listed preceding events were also natural.

---

[7] *State v. Clemens*, 300 Neb. 601, 915 N.W.2d 550 (2018).

[8] *Id.*

[9] *Id.*

[10] *Id.*

- 150 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
INLAND INS. CO. v. LANCASTER CTY. BD. OF EQUAL.
Cite as 316 Neb. 143

But in doing so, TERC reads out the language "including, but not limited to," and ignores the text that provides a calamity is simply a "disastrous event." In so doing, TERC effectively redefined a "calamity" as "a fire, an earthquake, a flood, a tornado, or other natural event." But this definition does not conform to the law.

This conclusion is further reinforced by the last sentence of § 77-1307(2)(b), which excepts from the definition of "[d]estroyed real property" any "property suffering significant property damage that is caused by the owner of the property." If a "calamity" did not include all disastrous events, as we explain above, it would be unnecessary to provide a statutory exception for damage caused by the property's owner.

We conclude that TERC erred in limiting a "calamity" to only "natural events." We reverse TERC's decision and remand the cause for further proceedings. Accordingly, we need not address Inland's remaining assignments of error.

*Cross-Appeal.*

Neb. Ct. R. App. P. § 2-109(E) (rev. 2023) provides:

Cases Involving Constitutional Questions. A party who asserts that a Nebraska statute is unconstitutional under the Nebraska Constitution or the U.S. Constitution must file and serve notice thereof with the Clerk by a separate notice or by notice in a Petition to Bypass at the time of filing such party's brief. . . . If the Attorney General is not already a party to an action where the constitutionality of the statute is in issue, a copy of the notice and brief asserting unconstitutionality must be served on the Attorney General within 5 days of the filing of the brief with the Clerk . . . . Proof of such service shall be filed with the Clerk.

The record in this case does not show that the Attorney General was served notice of the Board of Equalization's brief, nor is the Attorney General a party to this action. TERC was noticed, but we have emphasized the requirement of "strict

- 151 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
INLAND INS. CO. v. LANCASTER CTY. BD. OF EQUAL.
Cite as 316 Neb. 143

compliance" with § 2-109(E) and have been clear that the Attorney General must be notified of such constitutional questions in order for this court to consider them on appeal.[11]

Given this failure, we need not reach the Board of Equalization's cross-appeal.

## CONCLUSION

We reverse TERC's decision and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[11] See *State v. Catlin*, 308 Neb 294, 953 N.W.2d 563 (2021).

PAPIK, J., concurring.

The majority opinion concludes that a fire caused by someone other than the property owner is a "calamity" for purposes of Neb. Rev. Stat. § 77-1307(2)(a) (Cum. Supp. 2022), even if it is not a "natural event." I agree that a fire caused by someone other than the property owner is a "calamity," but for somewhat different reasons. I write separately to explain my thinking.

I begin with the fact that § 77-1307(2)(a) expressly defines "calamity" to include "a fire." Because the statute expressly provides that a fire qualifies as a "calamity," one might assume that this is a very straightforward case, there is nothing more to discuss, and all fires, including the one at issue in this case, qualify as a calamity. TERC found, however, that a fire caused by arson is not a "calamity," because of the reference in § 77-1307(2)(a) to "other natural event[s]." TERC took the position that in order to give the phrase "other natural event" meaning, "calamity" must include only events caused by nature.

I find no fault in TERC's attempt to avoid rendering the phrase "or other natural event" superfluous; indeed, a canon of statutory interpretation we often cite counsels as much, see, e.g., *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138

- 152 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
INLAND INS. CO. v. LANCASTER CTY. BD. OF EQUAL.
Cite as 316 Neb. 143

(2014). I disagree, however, that TERC identified the only reasonable way to interpret and give meaning to the "other natural event" language of § 77-1307(2)(a). In my view, "natural event" could be understood as referring not to the *cause* of the particular event at issue, but to the *type* of event, i.e., was the property destroyed as a result of a naturally occurring phenomenon like a fire, earthquake, et cetera? Under this alternative interpretation, the "other natural event" language serves the purpose of clarifying that naturally occurring phenomena that are not expressly listed nonetheless qualify as "calamit[ies]."

Not only do I find the alternative interpretation of "natural event" textually permissible, I find it to be the superior reading. For one thing, by referring to "a fire, an earthquake, a flood, a tornado, or *other* natural event," the statute seems to presuppose that each of the specifically mentioned phenomena is, for purposes of the statute, a "natural event." § 77-1307(2)(a) (emphasis supplied). If someone refers to "works of William Shakespeare, Edgar Allan Poe, Emily Dickinson, or other great poets," one could reasonably presume that the speaker considered Shakespeare, Poe, and Dickinson great poets. So too, it seems to me, could one presume that fires and the like are, for purposes of the statute, natural events.

In addition, reading "natural event" to refer to the type of event rather than the cause of the event avoids a major difficulty with the interpretation adopted by TERC alluded to above: Under that reading, "calamity" is specifically defined to include "a fire," and yet, somehow, some fires are not calamities. It is difficult to square such a reading with a court's "'role to make sense rather than nonsense out of the corpus juris.'" *Maslenjak v. United States*, 582 U.S. 335, 345, 137 S. Ct. 1918, 198 L. Ed. 2d 460 (2017) (emphasis omitted) (quoting *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S. Ct. 1138, 113 L. Ed. 2d. 68 (1991)).

Even assuming that both readings of "natural event" are reasonable and the statute is thus ambiguous, I would find in

favor of Inland based on the legislative statement of purpose codified in subsection (1) of § 77-1307. Although statutory policy statements and preambles cannot be used to override a statute's operative language, see, e.g., *In re Guardianship of Eliza W.*, 304 Neb. 995, 938 N.W.2d 307 (2020), such statements can be considered in "determining which of various permissible meanings the dispositive text bears." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 218 (2012). In § 77-1307(1), the Legislature declared that "fires, earthquakes, floods, and tornadoes occur with enough frequency in this state that provision should be made to grant property tax relief to owners of real property adversely affected by such events." The statement specifically mentions granting property tax relief to owners of real property adversely affected by fires, earthquakes, floods, and tornadoes. No mention is made of providing property tax relief only when those phenomena occur because of forces of nature. This statement of purpose, in my view, removes any lingering doubt as to whether a fire caused by someone other than the property owner is a "calamity" under the statute.

For these reasons, I concur in the majority's decision finding that a fire caused by someone other than the property owner is a "calamity" for purposes of § 77-1307(2)(a).